[Civ. No. 7118. First Appellate District, Division Two.—January 28, 1930.]

MERCHANTS TRUST COMPANY (a Corporation), Appellant, v. EDWARD W. HOPKINS, as County Assessor, etc., Respondent.

474

J. E. Hannon and Joseph C. Meyerstein for Appellant.

Everett W. Mattoon, County Counsel, and W. Sumner Holbrook, Jr., Deputy County Counsel, for Respondent.

DOOLING, J., *pro tem.*—Appellant commenced this action to enjoin the respondent, as assessor of Los Angeles County, from selling certain property for taxes under the authority of section 3821 of the Political Code and praying for other relief. The form and effect of the prayer in so far as such other relief is concerned is more fully discussed hereinafter.

Appellant is the owner in fee of the coal and mineral rights in certain land in Los Angeles County, such rights having been expressly reserved by appellant's predecessor in interest when the fee in the land was sold by such predecessor in interest in 1883. The coal and mineral rights were never separately assessed for taxes until 1926, when the assessor for the first time attempted to assess these rights at the aggregate value of $80,700; and, on the theory that they had escaped taxation in 1925, assessed them also for that year. Subsequently the assessor advertised the coal and mineral rights for sale for the 1926 taxes only, amounting to $2,565.58, and such sale was enjoined by preliminary injunction in this action. As a condition of the issuance of such injunction the trial court required appellant to deposit in court the sum of $2,800 to insure the payment of the taxes and costs if the court should after trial adjudge the tax to be valid and collectible. Final judgment was entered in the action on February 11, 1927, adjudging the property to have been validly assessed for 1926 and requiring the payment out of the sum deposited in court of the amount of the tax and $3 costs of sale, and for defendant's costs.

Appellant contends on appeal: 1. That the assessment was grossly exorbitant and excessive; 2. That the assessor

had no power to collect the taxes on a fee-simple interest in minerals; 3. That the property was not properly assessed in that the assessment was not entered in the proper assessment-book or in the manner required by law. Other points are also made by appellant which will be later noticed.

It is appellant's first contention that the assessment was both excessive and unequal. In this connection appellant contends that the property had at most a value of $30,000 and that similar property similarly situated was assessed at a much lower value. It is to be remarked in this connection that before the board of supervisors, sitting as a board of equalization, no evidence was introduced of the assessments upon other property of a similar character and the only evidence of the value of appellant's property was of sales by appellant of other similar rights outside of the tract in question and the offer by appellant to sell its right in the tract in question as a whole for $30,000. By this showing before the board of equalization we are satisfied that appellant laid no predicate for an attack upon the amount of the assessment in a court of equity.

Boards of equalization are *quasi*-judicial bodies established by law to remedy excessive assessments made by the assessor. The taxpayer must fairly submit the question of the value of his property to them in order to be entitled to attack their determination in court. Were this not true the taxpayer could practically disregard them by making only a perfunctory showing before them and could reserve his real showing for a later appeal to the courts. Such a procedure cannot be countenanced for obvious reasons. This rule is clearly laid down in *Wild Goose C. Club* v. *County of Butte*, 60 Cal. App. 339, commencing at page 341 [212 Pac. 711, 712], where the court says: "The evidence shows without conflict, and the court found, that at the hearing before the board of equalization no evidence was presented or offered bearing upon the value of plaintiff's lands or the value of any property in Butte County or tending to show that any property in the county was assessed at other than the full cash value thereof. . . . In *Los Angeles etc. Co.* v. *County of Los Angeles*, 162 Cal. 164 [9 A. L. R. 1277, 121 Pac. 384], it was held that, after the board of equalization has upheld an assessment in a case such as this, any fraud on the part of the assessor becomes

immaterial and that the determination of the board 'cannot be avoided unless the board has proceeded "arbitrarily and in wilful disregard of the law intended for their guidance and control, with the evident purpose of imposing unequal burdens upon certain taxpayers," . . . or unless there be something equivalent to fraud in the action of the board.' The assessment is presumed to be fair and the burden of proof rested upon petitioner in the proceeding before the board. (*Sunday Lake Iron Co.* v. *Township of Wakefield*, 247 U. S. 350 [62 L. Ed. 1154, 38 Sup. Ct. Rep. 495, see, also, Rose's U. S. Notes Supp.].) In the absence of evidence tending to show the value of plaintiff's lands or of other lands in the county, the premises were wanting from which a conclusion could be drawn by the board that inequality of assessment existed."

Appellant having made no showing of inequality of assessment before the board of equalization is precluded, under this rule, from attacking the assessment on the grounds of inequality here.

 Its showing before the board of equalization on the question of the value of its own property was, in our judgment, equally futile. No rule is better settled in California than the rule that the value of property cannot be proved by evidence of sales of other property, or of offers to buy or sell the property in question. (*Central Pac. R. R. Co.* v. *Pearson*, 35 Cal. 247; *Spring Valley W. W.* v. *Drinkhouse*, 92 Cal. 528 [28 Pac. 681]; *Santa Ana* v. *Harlin*, 99 Cal. 538 [34 Pac. 224]; *San Luis Obispo* v. *Brizzolara*, 100 Cal. 434 [34 Pac. 1083, 1084]; *Reclamation Dist.* v. *Inglin*, 31 Cal. App. 495 [160 Pac. 1098]; *Palladine* v. *Imperial Valley F. L. Assn.*, 65 Cal. App. 727 [225 Pac. 291, 303].) This rule was examined at large and restated in *Estate of Ross*, 171 Cal. 64 [151 Pac. 1138], and in *Palladine* v. *Imperial etc., Assn., supra*, it was held reversible error to refuse to instruct a jury that in determining value "They should not consider whether land of similar character could have been purchased at a lower price in other localities," the court saying: "The prices at which other lands of like quality and adaptability and similarly situated could be purchased do not constitute a proper standard for ascertaining the actual value of the land in question." In *San Luis Obispo* v. *Brizzolara, supra*, the court said that such "evidence was

proper in cross-examination of the plaintiff's witnesses for the purposes of testing the accuracy and honesty of the opinions which they had given of the value of the land in their direct examination, but as it would not have been admissible as affirmative evidence for the purpose of establishing the value of the land in question, it was not competent for the court to consider it for that purpose.''

We have then, so far as this phase of the case is concerned, no evidence of inequality of assessment, and no competent evidence of the value of the property assessed, presented to the board of equalization. It is evident from this that appellant did not sustain the burden of proof which rested upon it in the proceeding before the board of equalization to show that the assessment was either unequal or excessive and hence cannot now attack the action of the board on either of those grounds.

There is nothing in *Mahoney* v. *City of San Diego,* 198 Cal. 388 [245 Pac. 189], inconsistent with this conclusion. In that case the complaint alleged and the court found ''that the said board of equalization in regular session had and held a hearing thereon whereat the plaintiff herein appeared before said board and presented to said board all of the facts in his complaint herein alleged as to the irregularity and invalidity of said assessment and demanded the correction and equalization of the same, but that the said board at said hearing denied said plaintiff said relief and that said action was taken by said board with full knowledge of all the facts pleaded herein.'' (198 Cal. 393 [245 Pac. 191].) In the Mahoney case the evidence of inequality was presented to the board. In the instant case it was not.

Appellant's second point, that the assessor had no power to sell its coal and mineral rights for the taxes is well taken. Its predecessor in interest in reserving the coal and mineral rights in perpetuity reserved a fee-simple interest in that portion of the land. This is conceded by respondent. But respondent claims that even though appellant's interest is in fee the assessor is nevertheless authorized by Political Code, sections 3820, 3821, to sell it for the taxes, relying on the rule laid down in *Bakersfield etc. Co.* v. *Kern County,* 144 Cal. 148 [77 Pac. 892], *Graciosa Oil Co.* v. *County of Santa Barbara,* 155 Cal. 140 [20

L. R. A. (N. S.) 211, 99 Pac. 483], and *Mohawk Oil Co.* v. *Hopkins,* 196 Cal. 148 [236 Pac. 133]. In all of these cases the interest taxed was a mere leasehold right to take minerals from the land and not the ownership of the minerals in fee simple. The difference between such a leasehold right and a fee-simple title is well stated in the Graciosa case, *supra,* at page 144 of 155 Cal.: "The plaintiff, it is true, does not own an absolute present title to the oil strata in place. Such an absolute estate in an underlying stratum may be created and the estate of the owner of the overlying land and of the owner of the subterranean stratum will be as distinct and separate as is the ownership of respective owners of two adjoining tracts of land. For purposes of separate ownership, land may be divided horizontally as well as superficially and vertically. (Jones on Real Property, sec. 537; *State* v. *Moore,* 12 Cal. 70.) But the contract in question vests no present title in a stratum in place. It leaves the title to the oil in the landowner until it is brought to the surface."

Section 3820 above referred to reads: "The assessor must collect the taxes on all property when, in his opinion, said taxes are not a lien upon real property sufficient to secure the payment of the taxes. The taxes on all assessments of possession of, claim to, or right to the possession of land, and the taxes on taxable improvements located upon land exempt from taxation, shall be immediately due and payable upon assessments, and shall be collected by the assessor as provided in this chapter." In the three cases relied upon by respondent the leasehold right to take minerals was treated as a claim to or right to possession of land under the second sentence of this section. Respondent concedes that appellant's fee-simple interest is something more than a possession of, claim to, or right to possession of land; but insists that because of the frequently transitory and ephemeral value of the mineral rights the assessor may collect the taxes on such rights under the authority of the first sentence of section 3820 "when, in his opinion, said taxes are not a lien upon real property sufficient to secure the payment of the taxes."

But in making such contention respondent fails to take into consideration other material sections of the Political Code. Section 3821 reads: "In the case provided for in

the preceding section, at the time of making the assessment, or at any time before the first Monday of August following the assessment, the assessor may collect the taxes by seizure and sale of any personal property owned by the person against whom the tax is assessed, or if no personal property can be found, then the assessor may collect the taxes by seizure and sale of the right to the possession of, claim to, or right to the possession of the land." Sections 3820 and 3821 must be read and construed together. The limit of the assessor's authority, so far as sales for taxes are concerned, is if, and only if, no personal property can be found to seize and sell the possession of, claim to, or right to the possession of land. Nowhere is the assessor authorized to sell a fee-simple ownership of land or of any part of land. ▇ That such a fee-simple ownership is not a mere "possession of, claim to, or right to the possession of land" within the meaning of these sections is made certain, if any doubt could otherwise exist, by the language of the Political Code, section 3617, which enumerates as "real estate" "the possession of, claim to, ownership of, or right to the possession of land." The inclusion of the words "ownership of" in section 3617 and their omission from sections 3820, 3821 compels the conclusion that the "ownership of" land was not intended to be included among the classes of property which the assessor may sell for taxes. ▇ Since the assessor's power in this regard is purely statutory it must be measured by the terms of the statute. So measured it does not extend to the sale of the ownership in perpetuity of minerals in the ground.

▇ What has just been stated is applicable in large part to appellant's third major point. Political Code, section 3617, divides property into "real estate" and "personal property" for purposes of taxation. Subdivisions 1 and 2 enumerate under real estate: "1. The possession of, claim to, ownership of, or right to possession of land. 2. All mines, minerals, and quarries in or under the land. . . ." Appellant's interest may be classified either as "ownership of" a portion of the land or as "minerals" under the above enumeration. It is certainly more than "the possession of, claim to, or right to the possession of land." In *Bakersfield etc. Co.* v. *Kern County, supra,* the Supreme Court held that even the possessory leasehold right to take oil from

the land was properly assessable as real estate. There can be no doubt on that point where the interest is in fee simple as here. What logical distinction can exist between fee-simple estates divided horizontally, to repeat the language of the Graciosa case, and those divided superficially and vertically? In either case the owner has an interest in perpetuity in a portion of the land. It follows that appellant's interest should have been assessed in accordance with sections 3628 and 3650 of the Political Code and section 3, article XIII of the Constitution. This was not done. Instead the assessment was entered in the unsecured property assessment-book with no sufficient description to clearly identify the separate parcels. This, in our judgment, was error on the part of the assessor and of the board of equalization, who were asked by appellant to correct the assessment in this particular.

Appellant further complains of the failure of the trial court to find and adjudicate the invalidity of the assessment for 1925. In this connection appellant claims that it sought a declaratory judgment of the court as to the validity of the assessment for that year and that the court's failure to give such a judgment is reversible error.

The provisions for declaratory relief added to the Code of Civil Procedure in 1921 are still somewhat of a novelty in our system of judicial procedure. It may be questioned whether, in the absence of an actual threat by the assessor to collect the taxes for 1925, appellant would be entitled to such declaratory relief without making the county of Los Angeles a party. Once the assessment is made the county would seem to become the real party in interest to sustain the validity of the assessment. However, this question was not argued by counsel and we do not find it necessary to decide it.

Code of Civil Procedure, section 1060, provides that in certain enumerated cases "any person interested . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an action in the superior court for a declaration of his rights and duties in the premises. . . . He may ask for a declaration of rights or duties, either alone or with other relief." In construing this section it must be borne in mind that it provides for a new and additional form of relief to that

theretofore available in the courts, and where an action is brought seeking affirmative relief and declaratory relief in · addition thereto the complaint and the prayer should be so framed as to clearly advise the trial court and the adverse party that the plaintiff is seeking in addition to some affirmative relief theretofore open to him a declaratory judgment under this section of the code. The language of the section itself, being simply permissive in form, makes this perfectly clear: "He *may* ask for a declaration of rights or duties, either alone or with other relief."

While appellant's complaint contains allegations concerning the validity of the 1925 assessment the actual controversy between it and the respondent assessor was precipitated by the assessor's threat to sell the property for the 1926 taxes only, and when we look to the prayer of the complaint we fail to find any clear prayer for declaratory relief, as to the 1925 assessment. The prayer may be fairly summarized as follows: "that it be adjudged and declared that defendant as assessor is without authority to collect any taxes upon plaintiff's real estate, and that such taxes are collectible by the tax collector only at the times and in the manner provided by section 3746, Political Code; that it further be adjudged that the assessment is exorbitant, excessive, invalid, illegal and void; for a temporary and permanent injunction restraining the assessor from demanding or collecting any taxes on such property or making a sale and for general relief."

Having in mind that the immediate controversy concerned a threatened sale by the assessor for 1926 taxes we are satisfied that nothing in the prayer was calculated fairly to advise the court that appellant was seeking declaratory judgment as to the validity of the assessment for 1925. Fairly construed, the prayer asks that it be adjudged: 1. That the tax collector and not the assessor is the proper officer to collect the taxes; 2. That the assessment is excessive and void; 3. For a temporary and permanent injunction to prevent the assessor from proceeding to collect the taxes as threatened; and 4. For general relief. Nowhere in the prayer is the 1925 assessment mentioned in terms.

We must indulge every presumption not contradicted by the record on appeal in favor of the action of

the trial court. The right to ask for declaratory relief is optional with the plaintiff. We must, and do, in support of the trial court's action, presume that neither by prayer of the complaint nor otherwise was it brought clearly to the attention of the trial judge that appellant was seeking declaratory relief under section 1060 of the Code of Civil Procedure. For that reason we deem it unnecessary to consider or decide whether the assessment for 1925 was valid or not, although from what has already been said it is clear that it was not sufficiently entered in the assessment-book.

Finally, appellant complains of that portion of the judgment that the sum of $2,565.58, the amount of the tax on its property for 1926, be paid out of the amount deposited by it in court. Appellant in its complaint alleged the tender of $1200, the amount which it claimed and admitted to be a proper amount due as taxes for 1926 on the property involved, renewed the tender in its complaint and further offered to furnish such security as the court might deem adequate to secure the payment of such taxes as the court might finally determine to be due. As a condition to the issuance of the temporary injunction the court required the deposit of $2,800 for this purpose. This was in accordance with the settled rule that a taxpayer is entitled to no relief in equity unless he pays or tenders the amount of taxes which he is fairly bound to pay. (*Stege* v. *City of Richmond,* 194 Cal. 305 [228 Pac. 461]; *Steele* v. *County of San Luis Obispo,* 152 Cal. 785 [93 Pac. 1020]; *Esterbrook* v. *O'Brien,* 98 Cal. 671 [33 Pac. 765]; *Couts* v. *Cornell,* 147 Cal. 560 [109 Am. St. Rep. 168, 82 Pac. 194].)

In *Couts* v. *Cornell, supra,* the assessment was invalid because the property was not sufficiently described in the assessment-book. The plaintiff brought suit in equity for a decree declaring the assessments and sales made for such taxes invalid and enjoining the delivery of a tax deed. No tender or payment of the taxes was made by plaintiff. The court held that in the absence of such tender or payment plaintiff was entitled to no relief, the court saying at pages 561–563 of 147 Cal. [82 Pac. 195]:

"We think the case thus presented is without equity, and that on the familiar principle that he who seeks equity must do equity, the plaintiff should be denied the equitable

relief which he demands. The obligation to pay his just proportion of the taxes legally levied is one of the highest civic duties of the citizen to the state. . . . The principle justly applicable to the case is tersely stated in *Esterbrook* v. *O'Brien*, 98 Cal. 674 [33 Pac. 765] : 'So long as the moral obligation to pay any portion of the tax exists, a court of equity will not lend its aid to prevent a cloud upon the title, but will leave the party to his remedy at law.'

"Nor can the rule be limited to cases where it appears that only part of the original tax is just. If the entire tax or charge should justly be paid, the complainant would have no standing at all in equity, and he is allowed relief in any case solely because he offers to pay all that is just. . . .

"The fact that the assessment is imperfect as to the description does not, in view of the circumstances here appearing, destroy the moral obligation to pay the tax."

This case appears to us to be controlling on this point. Holding, as we do, that appellant is in no position to attack the amount of the tax, because of its failure to make any sufficient showing on that question before the board of equalization, it stands in court entitled to relief solely because the assessment was insufficient in form and the assessor was without authority to collect the tax by sale. It is precluded from questioning the amount of the assessment because it failed properly to present that question at the outset to the body constituted by law to afford it relief. Being in no position to question the amount of the tax it must pay it in order to have standing in a court of equity.

There is nothing in *Las Animas etc. Co.* v. *Preciado*, 167 Cal. 580 [140 Pac. 239], cited by appellant, in conflict with this conclusion. In that case lands not within the jurisdiction of the taxing officers were sought to be taxed. The distinction is pointed out by the court in that case at page 587 of 167 Cal.: "The equitable consideration of a disturbance of revenues is entirely absent in that this is an assessment, not by an authorized power which has irregularly exercised its power, but is an assessment by a school district acting absolutely without jurisdiction and authority."

The foregoing discussion makes it unnecessary to consider certain minor points urged by appellant.

By the judgment appealed from it was adjudged: 1. That appellant's property was validly assessed on the unsecured property roll for 1926; 2. That the amount of the taxes for 1926 on appellant's property in the sum of $2,565.58, together with $3 costs incurred in the sale of said property, be paid out of the sum deposited in court; 3. That defendant recover his costs; 4. That any balance of the sum paid into court be refunded to plaintiff.

It is clear from what has been said that appellant rather than respondent is entitled to its costs of suit, since it was entitled to have the assessor enjoined from making the sale and to a decree adjudging the 1926 assessment invalidly made; and that the $3 costs of the unauthorized sale should not be charged to appellant. It is likewise clear that that portion of the judgment adjudging the appellant's property to have been validly assessed on the unsecured property roll is erroneous.

The judgment is accordingly affirmed only as to that part which provides for the payment of the sum of $2,565.58 taxes out of the fund deposited in court, striking therefrom the portion providing for the payment of $3 incurred in the sale of said property, and as to that part which provides for the payment to plaintiff of the balance of the sum previously deposited in court; and as to all other portions thereof the judgment is reversed with directions to the trial court to enter judgment in accordance with this opinion. Appellant to recover its costs on appeal.

Nourse, Acting P. J., and Sturtevant, J., concurred.