[Civ. No. 10483.   Third Dist.   Dec. 11, 1962.]

VINCENT J. STREI, Plaintiff and Appellant, v. STATE PERSONNEL BOARD OF THE STATE OF CALIFORNIA et al., Defendants and Respondents.

Frank G. Finnegan and Carl Kuchman for Plaintiff and Appellant.

Stanley Mosk, Attorney General, John M. Morrison and John Fourt, Deputy Attorneys General, for Defendants and Respondents.

PIERCE, J.—Government Code section 19680 provides in part:

"It is unlawful for any person:

. . . . . . . . . . . . . .

"(c) Wilfully to furnish to any person any special or secret information for the purpose of either improving or injuring the prospects of any person examined, certified or to be examined or certified under this part or board rule."

Appellant was demoted from his position as Chief of State Police to state patrolman as the result of punitive action by the State Department of Finance for violation of the foregoing code section; also for failure to act with impartiality in violation of Government Code, section 19250, also for "inexcusable neglect of duty," (Gov. Code, § 19572, subd. (d)), also for "dishonesty" (Gov. Code, § 19572, subd. (g)), (after proceedings before, and on recommendations of, a hearing officer, and denial of a petition for reconsideration). He thereafter sought a peremptory writ of mandate from the superior court, which was denied.

His appeal from that judgment rests principally upon the question of whether sufficient evidence supports the finding of violation of the section above quoted.

Answer to this question hinges upon whether the acts of appellant in sending (or placing in the usual channel of distribution for mailing) to certain candidates for a civil service examination for the position of captain of state police, materials potentially to be used in such examination constituted such a wilful violation.

▋ In the early part of 1960 the State Personnel Board had scheduled an examination for such position. The examination, originally scheduled for June 11, 1960, was later postponed and held on August 27th of that year. It was a promotional examination open only to state policemen of specified eligibility.

Appellant was Chief of State Police, and had been for nine years. He had been a member of the California State Police for approximately 22 years.

The associate personnel analyst of the State Personnel Board in charge of giving the examination mentioned above was Theodore Olson. He had known appellant for many years and the two had had a number of professional contacts with reference to salary hearings for the state police and with "a number of personnel problems and disciplinary actions involv-

ing state policemen under his supervision with regard to examinations security." They "had served together on oral interview boards in which we had interviewed some candidates [from] whom evidence was being developed at that time with regard to their participation in some violations of examination security."

Accordingly, Olson looked to appellant to help him with material pertinent to the captain's examination to be given. In this connection appellant requested of Mr. Olson (and this is appellant's statement, not Olson's), "that the examination be made pertinent to the duties of a captain of state police, not to a captain of police generally, because we have a unique situation. Mr. Olson next said: 'All right, when you have time jot me down some questions that you believe are pertinent.' During the next month in my office I sketched out questions which I thought would not appear in other captain's examinations."

In response to the original, and subsequent similar, requests by Olson, appellant prepared a number of questions and answers. One hundred of these were true-false questions and answers. These were taken verbatim from a textbook: "Police Sergeants Manual by B. W. Gocke." All of these were transmitted to the State Personnel Board. Appellant had also prepared approximately 60 multiple choice questions and answers (of his own composition) and 20 of these were sent to said board.

Robert E. McKoy of San Francisco and Raymond A. Haskell of Los Angeles were sergeants in the state police and both were candidates, among a number of others on the force of the state police, for the captain's examination. In appellant's visits to the units where these two officers were employed, appellant, after having ascertained that they had made application to take the examination, recommended certain study materials. And appellant, upon phoned requests by these officers, had obtained and had mailed to them certain publications from the Department of Education.

At the time appellant delivered the examination materials to the State Personnel Board he caused exact copies of the true-false questions and answers to be placed in envelopes addressed to McKoy and Haskell at their home addresses. These were put in the box from which interdepartmental material was circulated and outgoing correspondence was routed for mailing. With these questions and answers, and in the same envelopes, he included certain multiple choice questions and

answers. The record is not clear whether the latter were the 20, out of 60 questions and answers, which had been selected and transmitted to the State Personnel Board, or the whole 60 authored by appellant. In each case, appellant appended to the examination material a note to the addressee as follows: "These questions are suggested to the Board as questions to be used in the Captain's examination. I believe your study of these questions will be worthwhile."

When the examination material above described was received at the office of the Personnel Board, Olson was away on vacation and the material was put through channels to be processed by another analyst, J. F. Atwood. Sixteen of the 20 multiple choice questions and answers submitted by appellant were approved by Atwood and rewritten on "item cards" to be used on the examination.

They were not used, the reason being that in the meantime another candidate for the examination had learned from a clerk employed in appellant's office that part of the examination material had been forwarded to McKoy and Haskell. This candidate brought the matter to the attention of John F. Fisher, executive officer of the board, starting the investigation which resulted in the dismissal proceedings.

In Olson's conversations involving the request to prepare examination material he did not specifically inform appellant that the material being solicited was confidential or secret. A "Security Manual" of the State Personnel Board provides that persons outside the board who have been asked to assist in test construction should be informed that all examination material is confidential, and should be instructed to submit such material in longhand retaining no copies thereof. In the event it is known that a prospective consultant expects to have close associates taking the examination the manual states it would be inappropriate to solicit assistance from him.

Appellant cites this manual and the fact that Olson did not expressly inform him that the material furnished was to be confidential in support of the contention that Olson and appellant in their conversations did not regard the materials to be furnished as anything more than suggested "areas" to be covered in the examination and that said materials, therefore, were not confidential in nature.

This position of appellant, earnestly and forcefully argued by able counsel, is, nevertheless, untenable. Appellant had, as asserted above, been a member of the state police for 22 years and for nine years had been its chief, a position which

he had reached through a series of competitive promotional civil service examinations. He had, according to Olson, participated with the latter on oral interview boards where the inquiry involved violations of examination security. He was aware of a number of disciplinary proceedings involving the theft of examinational material to gain improper advantage in civil service examinations. (This will be discussed below.) He had taught courses at Sacramento State College and had given examinations in connection with those courses. As to his understanding of the nature of the materials which he was furnishing for this particular examination, the following testimony by his clerk in relating what appellant had told him about the nature of questions furnished is significant: "[H]e said the agency had the right—they asked the agency to submit questions to them in order to help them prepare for a test, and not all the questions were used, maybe none of them were used, and even the ones that were used could be turned around. It was just to help the Personnel Board." Also significant is the fact that when Olson had asked appellant for examination material, the latter had brought into focus distinctions between the duties of a police captain on a municipal police force and those of a state captain; he thought candidates should be questioned specially to determine their realization of the difference; he had been asked to prepare questions illustrating that difference; and he had done so. Even with the belief that such questions and answers so prepared might be recast in form, it must have been obvious to appellant both (1) that they might *not* be, and (2) whether or not recast, preview of such material furnished to some candidates would be giving them a distinct advantage over their competitors at the examination.

■ Even were there any doubt on this proposition, we must state here that which appellate courts have had to assert again and again: that (within the area where reasonable minds may differ) we do not weigh conflicting substantial evidence on "insufficiency of evidence" appeals. ■ Moreover, neither does the superior court when it is reviewing this administrative board's decisions. It is bound, as we are, to resolve conflicts in the evidence in favor of the board's findings and to draw all reasonable inferences in support of its decisions. *(Hardy* v. *Vial,* 48 Cal.2d 577 [311 P.2d 494].)

■ Substantial evidence supports the conclusion that the examination materials furnished were confidential, were known

to be confidential, and that they were furnished for the purpose of improving the prospects of two persons to be examined.

But, says appellant, there is no evidence that the materials, started by him through channels for delivery to McKoy and Haskell, ever reached their destination. He points out that Sergeant Haskell, questioned as to his receipt of the true-false questions and answers had answered ''A. No, I don't believe so, ever saw it, no,'' and when asked whether he had ever seen copies of material similar to Exhibit No. 6 (the multiple choice questions and answers) answered ''No, I haven't.'' (He also testified that he had been away on vacation between July 29th-August 22d, receiving no correspondence whatever during that time. The examination was held on August 27th.) Sergeant McKoy denied receiving the true-false questions and answers but admitted receiving some materials in an envelope which his wife had opened and shown to him; that they were multiple choice questions and answers similar to those which had been delivered to the board by appellant. McKoy's wife testified that she had received and opened an envelope from appellant containing what looked to her to be study papers with ''true or false'' in typewriting. She showed them to her husband who said ''he didn't know what they were . . . they looked like study papers to him, so I took them from him and I tore them up.''

Passing (in the interest of brevity of opinion) the proposition that the acts of appellant were just as dishonest and in neglect of duty whether the examination materials ever reached the addressees or not, and therefore that the board's decision would have to be sustained on that score, we must nevertheless hold that the board was justified in its determination that the questions and answers were actually ''furnished'' to McKoy and Haskell. The board did not have to accept the testimony of these individuals claiming nonreceipt.

Appellant had explicitly testified to the addressing and dispatching of this material to both of these officers. The steps by which materials so placed for mailing ordinarily reached the United States post office through official routine were described. There are disputable presumptions that ''official duty has been regularly performed'' (Code Civ. Proc., § 1963, subd. 15; that ''the ordinary course of business has been followed'' (Code Civ. Proc., § 1963, subd. 20); that ''a letter duly directed and mailed was received in the regular course of the mail'' (Code Civ. Proc., § 1963, subd. 24) and the rule

is settled that ordinarily a finding of fact may rest upon a disputable presumption although all the other evidence is contradictory. (Witkin on Evidence, § 102, p. 122 [citing cases].)  ▮▮  In *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 P. 529], it is said on page 549 (quoting from *People* v. *Milner*, 122 Cal. 171, 179 [54 P. 833]):

". . . ' "Against a proved fact, or a fact admitted, a disputable presumption has no weight, but where it is undertaken to prove the fact against the presumption, it still remains with the jury to say whether or not the fact has been proven; and, if they are not satisfied with the proof offered in its support, they are at liberty to accept the evidence of the presumption." ' " (See 1 Wigmore, Evidence, (3d ed.) § 95, p. 524 et seq.; 9 Wigmore, § 2534, p. 488.)

▮▮  Applying the rule to the facts of this case, its reasonableness is manifest where the witnesses' self-interest involved could so strongly motivate equivocation. We note, moreover, that in the testimony of Sergeant McKoy and his wife there is express admission that some, and, perhaps, inferable admission that all of the examination materials sent were received.

▮▮  Appellant's last contention of error is admission into evidence by the hearing officer, over objection, of decisions in other disciplinary proceedings involving improper tampering with questions and materials by other personnel in other civil service examinations. It is urged that this evidence had for its purpose the "creating [of] an atmosphere" against appellant. We think, on the contrary, the purpose, as stated by respondent, was to establish that appellant was well aware of the necessity for security of civil service examination materials. It was shown that appellant knew of all of these charges, the disciplinary measures invoked and the grounds thereof. In fact, appellant had both participated in the investigations of, and had testified in, some of the cases. This evidence tended to prove that appellant's acts were wilful, an element of the offense charged.

The decision of the board must be upheld and the judgment affirmed. This determination is not reached, however, without certain feelings of compunction that the obligation of appellate courts is to administer justice inexorably, their judgments unmixed with compassion. We view the act proven against appellant here as an isolated heedless ill-considered misdeed, blackening what appears to have been an otherwise long and spotless record of official rectitude. It seems clear that appel-

lant gave this improper aid favoring McKoy and Haskell because he thought they were the two state police officers best qualified for the captain's position. Equally clear is the fact that the examination materials were not furnished by appellant with any thought of personal reward.

None of these things—neither the record of long and faithful public service nor the absence of evil design and purpose—excuses the offense. They would seem, however, to be factors which must have been weighed carefully in meting out punishment; and perhaps this was why demotion and not dismissal followed from the finding of guilt. This will make it possible for the board in the future, should it be so advised, to consider appellant's eligibility for promotion based upon a future record of expiation for his misdeed.

The judgment is affirmed.

Peek, P. J., and Schottky, J., concurred.