[Civ. No. 31826. Second Dist., Div. Two. Dec. 4, 1968.]

JOHN S. GRIFFITH et al., Plaintiffs and Respondents, v. COUNTY OF LOS ANGELES et al., Defendants and Appellants.

Smithers, Good & Potter, Clyde H. Potter, Jr., Baker, Ancel & Redmond and Mark G. Ancel for Plaintiffs and Respondents.

John D. Maharg, County Counsel, and A. R. Early, Assistant County Counsel, for Defendants and Appellants.

NUTTER, J. pro tem.*—This action was brought by seven owners of shopping centers in Los Angeles County to recover real estate taxes paid under protest. The cases involve questions concerning the methods of proving discrimination or unfair assessments of taxpayer's real property with particular problems directed to methods of proof of the ratio prevailing within the county of assessed valuation to market valuation for the tax year in question. It was the contention of respondents that the 1962-1963 tax assessment of their real property was excessive and that when they presented their protests to the Los Angeles County Board of Supervisors sitting as a board of equalization they did not receive a fair hearing and the board committed error in certain of its evidentiary rulings concerning the ratio determinations of the State Board of Equalization. The trial court agreed with respondents and made findings to the effect that the board denied respondents due process by excluding evidence of the ratio studies made by the State Board of Equalization for the tax years of 1960-1961, 1961-1962. The trial court remanded the matter to the board for a new hearing for determination of the issues raised by respondents' petition.

The hearing before the county board took place in July 1962. The matter came to trial before the superior court in July 1966. The court sitting without a jury received evidence of the proceedings before the board and other rejected evidence.

The court found: (1) That the respondents introduced substantial evidence of market value of the property for the tax year 1962-1963 and they attempted to introduce substantial evidence of the ratio prevailing generally of assessed to fair market value of locally assessable tangible property as of the lien date but that the Board of Equalization of the County of Los Angeles refused to admit such evidence. (2) That the evidence which the respondents sought to introduce consisted of certain ratio studies made by the California State Board of Equalization for the tax years 1960-1961 and 1961-1962 which showed ratios respectively of 23.3 percent and 24.4 percent for Los Angeles County and a statewide weighted average of 22.6 percent and 23.5 percent for each of such years. (3) That the assessor had testified that he was assessing at the same ratio in 1962 as he had in 1960 and in 1961 and that he had further testified that he had not objected to the state board determi-

---

*Assigned by the Chairman of the Judicial Council.

nations of ratio for those years and did not intend to object to its ratio determination for 1962.

The trial court further found that the board of equalization refused to take official notice of the determinations of ratio published by the state board for the tax years 1960-1961 and 1961-1962 on the grounds of *irrelevancy* and that had the board taken official notice of such ratios it *could have found* that the prevailing ratio in Los Angeles County in each of such years was 23.3 percent and 24.4 percent and that the statewide weighted average in each of such years was 22.6 percent and 23.5 percent and that substantially identical ratios prevailed in Los Angeles County for the tax year 1962-1963; that the refusal of the board of equalization to admit into evidence the state board determinations and the refusal to take official notice of such determinations precluded the respondents from introducing into evidence at the hearing before the County Board of Equalization substantial material evidence of the prevailing ratio for the tax year in question, which evidence, when applied to the market values of the property of the respondents would have tended to disclose substantial over-assessments and resultant discrimination. The trial court further concluded that by virtue of these findings, additional findings would be surplusage and made no other findings as to the other issues raised; that the action of the county board was void.

 The scope of judicial review in cases such as this is explained in *Bank of America* v. *Mundo*, 37 Cal.2d 1, at page 5 [229 P.2d 345] : ''The duty of determining the value of the property and the fairness of the assessment is confided to the appropriate county board of equalization. Furthermore, in discharging this duty, the board's determination upon the merits of the controversy is conclusive; the taxpayer has no right to a trial de novo in the superior court to *resolve conflicting issues of fact as to the taxable value of his property. (Universal Consol. Oil Co.* v. *Byram,* 25 Cal.2d 353 [153 P.2d 746] ; *Easter-Columbia, Inc.* v. *County of Los Angeles,* 70 Cal.App.2d 497, 500 [161 P.2d 407].) ██ The question presented to the superior court in such an action is *whether there was evidence of sufficient substantiality before the board to justify the finding (Kaiser Co.* v. *Reid,* 30 Cal.2d 610, 626 [184 P.2d 879]), and in the absence of fraud or malicious or arbitrary use of its powers the *board is the sole judge of questions of fact and of the values of property. (Los*

*Angeles Gas & Elec. Co.* v. *County of Los Angeles,* 162 Cal. 164, 170 [121 P. 384].) '' (Italics added.)

'' [T]he board's determination upon the merits of the controversy is conclusive; the taxpayer has no right to a trial de novo in the superior court to resolve conflicting issues of fact. . . .'' (*Best* v. *County of Los Angeles,* 228 Cal.App.2d 655, 657 [39 Cal.Rptr. 665].) ▮ The taxpayer has the burden of showing the board that the assessor's figures are improper ·and the assessments are not fair and equitable. (*Merchants Trust Co.* v. *Hopkins,* 103 Cal.App. 473, 478 [284 P. 1072]; *Wild Goose Country Club* v. *County of Butte,* 60 Cal.App. 339, 342 [212 P. 711]. See *Utah Const. Co.* v. *Richardson,* 187 Cal. 649, 654 [203 P. 401].)

'' 'It is a rule applicable to assessors and to boards having assessing powers that it is presumed that the assessing officers have properly performed the duties entrusted to them and, consequently, that their assessments are both regularly and correctly made.' '' (*Best* v. *County of Los Angeles, supra,* at p. 657.)

▮ The cases were tried on the theory that assessments on the taxpayer's property to its value exceeded that generally prevailing in the county. For the .taxpayers to substantiate this theory it would be necessary for them to submit evidence that there was a disparity of the ratio between that applied to appellants' property and that applied to other property generally prevailing in the county. To prove these contentions, the taxpayer must, of course, show the ratio prevailing generally and the ratio in his case. To sustain his burden the taxpayer must at least make a prima facie showing in this regard. That is, he must introduce some evidence of the assessment inequality before there is any burden on the assessor. Without this prima facie showing the assessor is not obliged ·to go forward with any evidence. He may stand on his presumption that the assessment is fair and equitable.

Accordingly, this court must determine if, as determined by the trial court, the evidentiary rulings of the board prejudiced the respondent-taxpayers in proving the assessment ratio prevailing generally for the tax year in question by excluding substantial evidence of the ratio or refusing to take judicial notice of the state board ratio studies for prior tax years. If so, there would be a violation of due process. (*Leach Corp.* v. *County of Los Angeles,* 228 Cal.App.2d 634, at p. 642 [39 Cal.Rptr. 654].)

### EVIDENCE OF RATIO

For the most part, respondents' efforts were directed toward an attempt to show that the assessor had used improper methods; that the county ratio of assessment was different from that determined by the State Board of Equalization.[1]

Proof of the difference between the state-determined ratio, if it was a fact, and that utilized by the county, would not in itself prove a discriminatory assessment practice against taxpayers.

█ Assessments are required to be equalized in the county as a whole, and discrepancies as between particular properties do not necessarily establish that plaintiffs' assessments were unfair as compared to the county as a whole. (*Wild Goose Country Club* v. *County of Butte,* 60 Cal.App. 339 [212 P. 711]. See *A. F. Gilmore Co.* v. *County of Los Angeles,* 186 Cal.App.2d 471, 476 [9 Cal.Rptr. 67]; *Alpaugh Irr. Dist.* v. *County of Kern,* 113 Cal.App.2d 286, 294 [248 P.2d 117]; *Birch* v. *County of Orange,* 88 Cal.App. 82, 85 [262 P. 788].)

█ If assessments were equalized for the county as a whole, it would make no difference whether there was a discrepancy between the county ratio or the state-determined ratio.

A key issue in this case is the effect of a stipulation regarding County Assessor Quinn's testimony concerning the county ratio of assessed valuation to market valuation. If this stipulation were binding on respondents as to the fact of the existing county ratio for the tax year in question, then the question of whether the board excluded evidence of the state board's determination of the ratio would be moot.

Mr. Early, deputy county counsel, was asked by counsel for the respondent-taxpayers, Mr. Ancel, if he would stipulate that the ratio of assessed to fair market value prevailing generally in the county as of the lien date for 1962 was 50 percent. Mr. Early stated, "With the added qualification that it is 50% of Mr. Quinn's, the Assessor's opinion of the fair market value of all property, yes I so stipulate." Mr. Ancel asked if that was according to Mr. Quinn's testimony. Thereupon, Mr. Early stated "That is based entirely on Mr. Quinn's testimony, yes."

The superior court found that Mr. Quinn's testimony was

---

[1]Some of the problems giving rise to this litigation were remedied at least in part by the 1966-1967 amendments to the Revenue and Taxation Code. (See Klan and Platt, *Aftermath of Scandal* (1966) 41 State Bar J. 662.

evasive and equivocal, that the stipulation was *not* a stipulation as to the actual ratio of assessed value to market value in the County of Los Angeles for 1962, but was merely a stipulation as to the meaning of the assessor's testimony.

It is unnecessary for us to determine if this was a stipulation binding respondents as to the generally prevailing assessment ratio. It is sufficient to say that the board could consider Mr. Quinn's testimony as substantial evidence of the generally prevailing ratio for the tax year in question. ▮ It is not our function to weigh conflicting substantial evidence nor should the superior court when it is reviewing administrative board decisions. (*Strei* v. *State Personnel Board,* 210 Cal. App.2d 643, 648 [26 Cal.Rptr. 875].) Accepting the stipulation as substantial evidence of the ratio for 1962, were respondents prejudiced by the exclusion or rejection of evidence of the state's determination or ratio for prior tax years?

Issues concerning Los Angeles County board's admission or exclusion of evidence of the State Board of Equalization assessment ratios for prior tax years were explored and determined in the cases of *Leach Corp* v. *County of Los Angeles, supra,* and *Web Service Co.* v. *County of Los Angeles,* 242 Cal.App.2d 1 [51 Cal.Rptr. 753]. We must determine if the board rulings in this case prejudiced plaintiffs or if there is sufficient cause to vary the rules in *Leach* and *Web Service, supra,* that evidence of ratios in prior years is irrelevant.

The taxpayers requested that the board take judicial notice of the assessment ratios for the prior years of 1960-1961, 1961-1962 as determined by the State Board of Equalization.

The superior court found that the board committed prejudicial error when it refused to take judicial notice of these ratios. In explaining its tentative opinion the trial court stated from the bench that there is a distinction between the situation in this case and that in *Web Service Co.* v. *County of Los Angeles, supra,* in "the fact that there was testimony here by the Assessor in effect that he was assessing at the same ratio in 1962 that he had assessed in 1960 and 1961."

At the hearing before the board respondents made a motion that the board require the assessor to produce the preliminary, tentative and unpublished tabulations of that ratio as made by the state board. In ruling on this motion, the trial judge stated he was following the *Leach* and *Web Service* rule, and the board properly excluded the *tentative* tabulations for the tax year in question. ▮ Accordingly, the question on this appeal is narrowed to a review of the trial

judge's finding that the board's refusal to take official notice of the state's 1960 and 1961 ratio determinations prevented respondents from introducing substantial material evidence of the 1962 ratio; that the evidence of the prior tax years' ratio would have tended to disclose substantial over-assessment and discrimination.[2]

Assessor Quinn testified that he was assessing at the same ratio in 1962 that he used in the tax years for 1960 and 1961. Even assuming from this testimony that the board could have found substantially identical ratios for 1962 and 1961 and 1960, under the previous rulings of the court in *Leach* and *Web Service, supra,* it is impossible to determine how and in what manner appellants may have been prejudiced, nor how this would have tended to disclose over-assessment and discrimination. We cannot conclude that the exclusion of ratio evidence of prior years prevented appellants from offering to the board any substantial material evidence of the 1962 ratio particularly in view of the stipulation of the parties concerning Assessor Quinn's testimony.

We do not believe there is sufficient difference in the facts of this case or in matters developed on cross-examination of Mr. Quinn with particular regard to his use of the same ratio in 1960 and 1961 to modify the ruling in *Leach* and *Web Service, supra.*

In the *Web Service* case, the taxpayer who was seeking a reduction in his 1961 assessment also requested the county board to take judicial notice of the 1960 county-wide assessment ratio as determined by the State Board of Equalization.

[2]Revenue and Taxation Code, section 1818: "The board shall each year prepare tabulations showing for each county the ratio of assessed to full cash value of locally assessable tangible property. The tabulations shall show, in such a way as to prevent identification of individual parcels, the ratio of assessed to full cash value of each parcel of such tangible property in the sample of any survey in the county made in the last year pursuant to Section 1815. The tabulations shall also show the derivation of the total full cash value of the locally assessable tangible property on the current roll from the total full cash value of the locally assessable tangible property on the roll of a prior year pursuant to Section 1817. All such tabulations shall be open for inspection by all persons interested."

Revenue and Taxation Code, section 1819 (as it read in 1960): "As soon as tabulations have been made pursuant to Section 1818, but not later than August 1st, the board shall give the assessor of each county a reasonable opportunity to examine and discuss with it that portion of the tabulations affecting property in his county. After making any adjustment it deems appropriate as the result of such discussion, but not later than September 2d, the board shall make available for public inspection all such tabulations and shall publish the ratio of assessed to full cash value of locally assessable tangible property for each county."

The action of the board in refusing to take such judicial notice was upheld by the court. (*Web Service Co.* v. *County of Los Angeles, supra,* at p. 11.)

Respondents argue that the assessor's testimony that he was assessing at the "same ratio" (i.e. 50 percent of his opinion of fair market value) for the tax year and prior years should compel a modification of the *Leach* and *Web Service* rules. The reason for the rules in these cases still applies in the case at bench. No worthwhile purpose is served by opening up questions concerning prior tax years. New issues and complications are introduced which are irrelevant to the issue in dispute, i.e. the current tax year. Finally, proving that there was a wide discrepancy between the county assessor's opinion of market value or full cash value and the state board's opinion of a prior year does not prove that plaintiffs' property had been assessed on any different basis from property generally throughout the county. The state board's ratio of prior years would not have materially aided plaintiffs in this hearing, and the assessor's refusal to disclose it was not prejudicial. (*Leach Corp.* v. *County of Los Angeles, supra,* at pp. 641-642; *Web Service Co.* v. *County of Los Angeles, supra,* at p. 11.)

Respondents argue that there was evidence of the relationship between the total county assessment in 1961 and in 1962, but this is helpful only if one also knows the total fair market value of taxable property in the county in 1962. Respondents tendered no evidence on this point, or any evidence of disparity of treatment or of the ratio of their property and other property in the county. Thus, any error of the board excluding the evidence even on an impeachment theory could hardly have been prejudicial. On this record a court could not say that the board exceeded its powers when it concluded that appellants failed to sustain their burden of proving they suffered unlawful discrimination. (*Best* v. *County of Los Angeles, supra.*)

### EVIDENCE OF MARKET VALUE

The only testimony of the market value of the shopping centers presented to the board by respondents was the affidavit of one Clem Glass and the enclosures thereto. The exhibits attached to his affidavit show that Mr. Glass used a capitalization of income study to determine the "net value" of the shopping center.

The testimony before the board was that the market value of Alhambra Shopping Center amounted to $1,480,000; the

market value of Atlantic Square amounted to $2,600,000; Lakewood Triangle $800,000; Pomona Valley Center $1,730,670; Reseda Plaza $775,990; exclusive of the Food Giant Market; Thriftimart $350,000; Whittier Downs $1,422,768.

Although Mr. Glass stated in his affidavit that he had "appraised the value of the entire fee interest" in each shopping center, he admitted on cross-examination that his valuation opinion would have been different if the tenants had been different; he admitted that his opinion of the fair market value of these properties would not be the same if the rents were substantially lower, for instance one dollar a year; he admitted that a combination of the lessor's interest and the lessee's interest in each shopping center would equal "the actual fair market value of the property"; he admitted that it was "reasonably fair" to say that his appraisals were of the type he would make for a lending institution that intended to loan money to the lessor of a shopping center, and that his opinion of value depended entirely on the terms of the existing leases and the credit standing of the tenants.

Assessor Quinn testified without contradiction that he had assessed the complete estate in each property.

The board could have rejected the Glass testimony.

■■■■ Opinions of value and other expert opinions, *even though uncontradicted,* are worth no more than the reasons and factual data upon which they are based.

"An expert's opinion is no better than the reasons given for it. ' "If his opinion is not based upon facts otherwise proved . . . it cannot rise to the dignity of substantial evidence." ' " (*San Diego Gas & Elec. Co.* v. *Sinclair* (1963) 214 Cal.App.2d 778, at p. 783 [29 Cal.Rptr. 769].)

To the same effect is *Hemmerling* v. *Tomley, Inc.* (1967) 67 Cal.2d 572 at p. 577 [63 Cal.Rptr. 1, 432 P.2d 697], where Chief Justice Traynor states that "We cannot agree, however, with the Hemmerlings' contention that the trial court was bound to accept their uncontradicted valuation testimony." A tax case in which the same result was reached is *Bordenave* v. *Franchise Tax Board* (1958) 158 Cal.App.2d 291 [322 P.2d 260].[3]

---

[3] See also *People* v. *Bassett,* 69 Cal.2d 122, at pp. 145-146 [17 Cal.Rptr. 193, 443 P.2d 777], where the court discussed expert testimony which may not be deemed substantial evidence, citing *Estate of Powers,* 81 Cal.App.2d 480 [184 P.2d 319], and *Estate of Teed,* 112 Cal.App.2d 638 [247 P.2d 54], where the sole testimony of experts was rejected as not being substantial evidence.

We have determined that appellants have not sustained their burden. The record as a whole supports a finding by the board that the assessments were not unfair or inequitable.

In 1966 the rule was that "If the presumption affects the burden of proof, the court is still required to affirm a verdict or finding in favor of the party relying on the presumption unless it is possible for the court to find that the adverse party overcame the presumption as a matter of law." (California Evidence Code Manual (Cont.Ed.Bar 1966), § 2.35, p. 434.)

"Whether a party has discharged the burden of proof is a question for the trier of fact to decide. If the party with the burden of proof fails to establish in the mind of the trier of fact the requisite degree of belief concerning the fact in issue, the trier of fact is required to rule against him regarding that fact." (California Evidence Code Manual (Cont.Ed.Bar 1966), § 2.37, p. 435.)

Under the presumption of the fairness and regularity of the assessment and in accordance with the rule prevailing at the time of the trial that "a finding of fact may rest upon a disputable presumption although all the other evidence is contradictory." (*Strei* v. *State Personnel Board, supra,* at p. 650.) The taxpayers did not sustain their burden of showing the board that the assessor's figures were unfair or discriminating. (*Merchants Trust Co.* v. *Hopkins,* 103 Cal.App. 473, 478 [284 P. 1072]; *Wild Goose Country Club* v. *County of Butte,* 60 Cal.App. 339, 342 [212 P. 711]. See *Utah Constr. Co.* v. *Richardson,* 187 Cal. 649, 654 [203 P. 401].) The excluded or rejected evidence would not have changed the result.

The judgments are reversed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied January 3, 1969. Fleming, J., did not participate therein. Respondents' petition for a hearing by the Supreme Court was denied January 29, 1969.