Opinion
 

 JONES, J.
 
 *
 

 Appellant Fujitsu Microelectronics, Inc. (hereafter Fujitsu) appeals a judgment in favor of the Assessment Appeals Board of the County of San Diego (hereafter the Board).
 

 Fujitsu sued the Board on December 14, 1993, claiming a refund of property taxes imposed for the tax year 1992-1993. Fujitsu had filed an administrative claim for reduced assessment with the Board on August 27, 1992, which was denied following a hearing on March 18, 1993. The claim asserted that the San Diego County Assessor (hereafter Assessor) applied improper depreciation rates for certain personal property and fixtures of Fujitsu.
 
 [1]
 

 Fujitsu contends an accelerated depreciation rate on its personal property is warranted, based on a study of depreciation rates of semiconductor
 
 *1124
 
 manufacturing equipment by Arthur D. Little, Inc. (hereafter the ADL report). The Board refused to admit the ADL report into evidence, but the substance of the report was pursued through the testimony of Fujitsu’s representative at the hearing. Essentially, the report concludes that semiconductor property depreciates more rapidly than other types of personal property. Fujitsu contends that ignoring the depreciation rates reflected in the ADL report resulted in an arbitrary determination.
 

 Fujitsu also contends that the depreciated value of the fixtures as of the lien date, March 1, 1992, was improperly set above fair market value. About six months after the lien date, Fujitsu announced its intention to close its manufacturing plant and, shortly thereafter, closed the plant. Fujitsu claims this event caused a plunge in the market value of the plant’s fixtures which should have been reflected in the assessment of their value for tax purposes.
 

 The Board rejected Fujitsu’s assessment contentions, as to both personal property and fixtures. It concluded that neither the ADL report nor the plant closure was germane to the proper assessment of market value and Fujitsu’s evidence was insufficient to overcome the presumption under California Code of Regulations, title 18, section 321 (hereafter section 321) that the assessment was fair and equitable. No evidence was received from the Assessor.
 

 The trial court proceeding was tantamount to a mandamus action. The evidence before the court included the Board’s administrative record (hereafter AR), the State Board of Equalization’s (hereafter SBE) letter, dated June 14, 1991, analyzing the ADL report, and the declaration of Jim Winningham of the Assessor’s office.
 

 Noting the ADL report was controversial and was not formerly adopted by the SBE, the court found the Board properly rejected the report. The court upheld the Board’s finding that Fujitsu failed to rebut the presumption the Assessor performed properly.
 

 Discussion
 

 There are three basic methods of determining full cash value of property: 1) the market data method, 2) the income method, and 3) the cost method.
 
 (Bret Harte Inn, Inc.
 
 v.
 
 City and County of San Francisco
 
 (1979) 16 Cal.3d 14, 24 [127 Cal.Rptr. 154, 544 P.2d 1354].) Only the cost method
 
 *1125
 
 was employed here with respect to personal property. This method of valuation requires the Assessor to subtract depreciation from cost information supplied by the taxpayer. The method must be designed so costs are modulated by depreciation factors in a manner reasonably calculated to achieve an approximation of full value.
 

 Citing
 
 Mahoney
 
 v.
 
 City of San Diego
 
 (1926) 198 Cal. 388, 402 [245 P. 189], the
 
 Bret Harte
 
 court noted application of a uniform depreciation factor of 50 percent for all properties was an abuse of discretion, as it was arbitrary and failed to assess all property to its full cash value.
 
 (Bret Harte Inn, Inc.
 
 v.
 
 City and County of San Francisco, supra,
 
 16 Cal.3d at p. 26.) Fujitsu argued before the Board that the Assessor’s method was wrong because it considered depreciation factors that were not as accelerated as those in the ADL report.
 

 Winningham, the supervising auditor/appraiser of the Assessor’s office, informed the Board that the Assessor used a set of SBE depreciation standards pertinent to Fujitsu’s industry in adjusting the historical costs to obtain fair market value. There was no evidence that the depreciation factors used by the Assessor were incorrect. Fujitsu persistently urged the Board to totally adopt the depreciation rates in the ADL report. However, the SBE had earlier evaluated the ADL report and concluded it was incomplete and contained unverified data and flawed logic, resulting in invalid conclusions. The SBE’s evaluation also concluded the ADL report reflected a lack of appraisal expertise. The Board’s chairman was aware of the questionable validity of the report and the SBE’s condemnation of it. It was noted during the Board’s proceedings that only the Sacramento County Assessor’s office had accepted the ADL report. The Board did not abuse its discretion in rejecting the report.
 

 We reject Fujitsu’s contention that the assessment of the fixtures was flawed because it failed to consider the reduction in their market value resulting from the announcement of closing, and subsequent closing, of the plant six months after the lien date. The effects of the plant closure were irrelevant to the appraised value of the fixtures in the 1992-1993 tax year. The fact there is a forced sale of property at a sacrificial price
 
 after
 
 the lien date has no bearing on the property’s value
 
 on
 
 the lien date. Further, Fujitsu’s contention is contrary to the principle that the fair market value approach is based, among other things, on “the amount of cash or its equivalent [the] property would bring if exposed for sale in the open market under conditions in which neither buyer nor seller could take advantage of
 
 *1126
 
 the exigencies of the other. . . (Rev. & Tax. Code, § 110, subd. (a).) The Board properly rejected Fujitsu’s valuation argument as to the fixtures.
 

 Fujitsu contends that the Board erred in finding Fujitsu failed to overcome the presumption, set forth in section 321 that the Assessor “properly performed his duty and assessed all properties fairly . . . .”
 

 In
 
 Griffith
 
 v.
 
 County of Los Angeles
 
 (1968) 267 Cal.App.2d 837, 842 [73 Cal.Rptr. 773], the court stated, “To sustain his burden the taxpayer must at least make a prima facie showing in this regard. That is, he must introduce some evidence of the assessment inequality before there is any burden on the assessor. Without this prima facie showing the assessor is not obliged to go forward with any evidence. He may stand on his presumption that the assessment is fair and equitable.”
 

 Fujitsu’s contention of assessment inequity was based on the ADL report. However, the ADL report was highly criticized by the SBE and was not received as evidence. Thus, there was an insufficient showing of assessment inequality as required by
 
 Griffith
 
 to shift any burden of proof to the Assessor. The Board properly applied the section 321 presumption against Fujitsu.
 

 Although Fujitsu characterizes its challenge as one to the Assessor’s
 
 method
 
 of appraisal, Fujitsu does not object to the Assessor’s use of the cost method. The dispute in this case is over the calculation of depreciation to establish the value of the property along the trail between acquisition and obsolescence. Thus, the instant case does not truly involve a challenge to the validity of the valuation method used by the Assessor, but rather a challenge to the result the Assessor reached after applying that method.
 

 “[R]ecent cases have . . . distinguished between challenges to the result reached by the assessor after applying a sound valuation method and challenges to the validity of the method itself. [Citation.] If the plaintiff claims only that the assessor and the Board of Equalization erroneously applied a valid method of determining full cash value, the decision of the board is equivalent to the determination of a trial court, and the trial court in turn may review only the record presented to the board. [Citations.] The trial court may overturn the board’s decision only when no substantial evidence supports it, in which case the actions of the board are deemed so arbitrary as to constitute a deprivation of property without due process.”
 
 {Bret Harte Inn, Inc.
 
 v.
 
 City and County of San Francisco, supra,
 
 16 Cal.3d at p. 23.)
 

 
 *1127
 
 Here, substantial evidence supports the Board’s conclusion that the Assessor properly assessed Fujitsu’s property. The court did not err in upholding the Board’s decision.
 

 Disposition
 

 We affirm the judgment.
 

 Benke, Acting P. J., and Huffman, J., concurred.
 

 *
 

 Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, Section 6 of the California Constitution.
 

 [1]
 

 The Assessor uses depreciation factors for several hundred categories of personal property, including semiconductor materials. Those depreciation factors were applied to the cost figures furnished by Fujitsu to create the fair market value for tax purposes.