[Civ. No. 3361. Third Appellate District.—December 28, 1927.]

A. OTIS BIRCH et al., Appellants, v. COUNTY OF ORANGE, Respondent.

Clyde C. Shoemaker and Woodruff & Shoemaker for Appellants.

Z. B. West, Jr., District Attorney, Alex P. Nelson and L. A. West for Respondent.

FINCH, P. J.—The plaintiffs brought two actions, under the provisions of section 3819 of the Political Code, to recover excess taxes paid by them under protest for the fiscal year commencing July 1, 1916. The actions were consolidated and tried together. Judgment was entered in favor of the defendant and this appeal is from the judgment. In a former trial judgment of nonsuit was entered. That judgment was reversed on appeal. (*Birch* v. *County of Orange*, 186 Cal. 736 [200 Pac. 647].) The second trial was had upon the same pleadings as the first.

The plaintiffs own a tract of oil land about a quarter of a mile in length from north to south and an eighth of a mile wide, containing 21.16 acres. This land is bounded on the north by lands of the Crown of the Valley Oil Company, under lease to the Columbia Oil Producing Company; on the east by those of the Brea Canyon Oil Company; on the south by those of the General Petroleum Company, and on the west by those of the Fullerton Oil Company. These surrounding holdings are much larger in area than that of the plaintiffs. This fact is not of great significance, however, because only parts of such surrounding lands have been proved to contain oil and they have but little value other than for the oil therein. Nearly all the plaintiffs' oil wells are located about 120 feet from the boundaries of their land, and many of the best wells of the surrounding owners are about the same distance on opposite sides of the Birch boundaries. The year 1916 "was the first year in which there was an attempt made to readjust the valuations of the oil properties" of the county "on a production basis." The following table has been compiled from facts to which the county assessor testified at the trial; the first column of figures giving the number of producing wells upon each holding, the second the number of barrels of oil produced during the three months next preceding March 1, 1916, the third the assessor's valuations placed upon the lands and the mineral rights therein, and the fourth the valuations fixed by the county board of equalization:

| | | | |
|---|---|---|---|
| Birch Oil Co. ..................... | 8 | 138,601 | $645,120 | $600,000 |
| Fullerton Oil Co. .................. | 8 | 108,982 | 34,915 | 47,155 |
| General Petroleum Co. .............. | 8 | 84,554 | 40,000 | 40,000 |
| Brea Canyon Oil Co. ............... | 23 | 135,587 | 130,000 | 177,250 |
| Columbia Oil Producing Co. ........ | 5 | 72,185 | 111,690 | 111,690 |

Nearly all of the oil produced by the Brea Canyon Oil Company came from ten of its wells, most of which are near the Birch property, that property being fully developed and "the center of the developed territory in that oil district." The wells of all the five companies produced gas in commercial quantities, but the comparative value thereof and the proportionate amounts produced by the respective companies were not such as to materially affect the problem of equalization. The gross annual returns from the Birch property were $290,000 and the operating expenses $200,000. About half the product of the Birch wells at the time of the assessment was "light oil, . . . bringing 71 cents and the other oil . . . was about 62 cents." The foregoing facts were substantially proved at the hearing before the board of equalization and at the former trial. These assessments were considered by the supreme court on the former appeal and, in relation thereto, at page 740, it is said: "On the very basis used by the assessor the excessive and unreasonable disparity between the assessments upon plaintiffs' lands and others of like value and similarly situated is so obvious and inconsistent with any theory of fair dealing that it cannot be reconciled on the mere presumption that the assessor and board of equalization did their duty as they saw it. In the absence of any explanation or justification for this inequality (and there is none offered), it stands out so glaringly and out of all reason that of itself it raises an inference of bad faith." No reasonable explanation of such disparity appears in the record on this appeal. The assessor testified at the last trial that the specific gravity of the oil produced from the Birch property was from 19 to 29, "more of the higher gravity than the lower," that of the General Petroleum 19, Brea Canyon 23, Columbia 28, and Fullerton 23; that the oil of the other companies contained a higher water content than that of the Birch Company, although other and specific evidence shows that the percentage of water in the oil from the Birch wells is about the same as the average in that of the other com-

panies; and that it was more difficult to drill wells on the other properties than on the Birch land. ■ The difficulty of drilling would be an important factor in determining the value of undeveloped oil land, but it is a false quantity in fixing the value of lands in which drilling has been completed, as were the lands immediately surrounding those of the plaintiffs and which were adopted by the assessor as a basis of comparison. ■ Giving the fullest consideration to the evidence tending to support the assessment, the inequality is too gross to be reconciled with the impartial performance of official duty by the assessor and the county board of equalization. It is true that the Birch property appears to be in the center of the oil field, but the difference in oil production between the plaintiffs' wells and those of the surrounding lands, making all due allowance for difference in quality, is not such as to justify the astonishing difference in valuations. That the assessor and the board of equalization must have realized this gross inequality is evidenced by the fact that in the year 1917 the same properties, under similar conditions, were assessed as set forth in the following table, arranged in the same manner as the one already given:

| | | | |
|---|---|---|---|
| Birch Oil Company | 8 | 51,918 | $454,390 |
| Fullerton Oil Co. | 9 | 73,010 | 345,000 |
| General Petroleum Oil Co. | 8 | 64,489 | 197,155 |
| Brea Canyon Oil Co. | 23 | 98,679 | 392,820 |
| Columbia Oil Producing Co. | 6 | 45,166 | 406,465 |

■ The mere fact, however, that a few other properties are assessed much lower in proportion to value than those of the plaintiffs, while showing at least constructive fraud, is not a sufficient ground for reducing plaintiffs' assessment. ''To equalize is to make equal, to cause to correspond, to be like in amount or degree, *as compared with something.*'' (*Wells Fargo & Co.* v. *Board of Equalization,* 56 Cal. 194, 196.) Obviously, in determining whether an unequal burden of taxation has been placed upon him, a complaining taxpayer's assessment is to be compared with the average assessment of all the other properties in the county. (*Wild Goose Country Club* v. *County of Butte,* 60 Cal. App. 339 [212 Pac. 711] ; *Mahoney* v. *City of San Diego,* 198 Cal. 388, 397 [245 Pac. 189].) Of course, if the taxpayer shows that his property is assessed at a greatly

higher proportion of its value than that of several other persons, the inference may arise therefrom, in the absence of evidence to the contrary, that his assessment is disproportionate to the assessments of the county as a whole but, when it is shown that his assessment is not disproportionate to that of other property generally, to reduce his assessment merely because the property of a few others is assessed too low would only increase the inequalities already existing in the assessment-roll of the county.

In this case, however, the uncontradicted evidence shows that the plaintiffs' property was assessed for a greater percentage of its value than other property in the county generally. The assessor testified that the property of the county as a whole was assessed at one-third of its value. Two of the plaintiffs testified that the Birch property was of the value of only $500,000 in March, 1916, and that during the latter part of 1915 and the early part of 1916 they endeavored to sell it at that price but were unable to do so. Harry R. Johnson, a "petroleum geologist and valuation engineer," testified that the market value of the Birch property on the first Monday in March, 1916, was $530,000. Robert B. Moran, a "geologist and petroleum engineer," testified that the value was $400,000. Carl H. Beal, another "petroleum geologist and engineer," placed the value at $539,000. Walker S. Clute, a geologist, placed it at $460,000. Against this testimony is that of the assessor, not that the value of the Birch property was any particular sum in March, 1916, but that, in making the assessment in that year, he "estimated this piece of property at nearly $2,000,000; that is, $1,955,175," and the testimony of some of the members of the board of equalization that, based on the evidence produced before the board, they "figured" or "fixed" the value at about $2,000,000. Clearly, such testimony is not sufficient to create a conflict, especially in view of the striking disparity between the valuation placed upon the Birch property and those upon the surrounding lands, which the assessor and such members of the board estimated as one-third the value thereof.

The assessment of 1918, proportionately the same as that of 1917, was upheld. (*Birch* v. *County of Orange,* 59 Cal. App. 133 [210 Pac. 57].) That assessment was based on a

much higher market price of oil than prevailed in 1916. It appears from the decision in that case that for the year 1918 the assessor computed the value of the oil lands and the mineral rights therein by multiplying the net annual income therefrom by ten and then taking forty per cent of such total value as the assessed value. In this case the uncontradicted evidence shows that the net annual income from the Birch property at the time of the assessment was $90,000. Multiplying this by 10 would give a total value of $900,000. Taking one-third thereof, as in the assessment of other property in the county during that year, would give an assessed valuation of $300,000, or only half the amount fixed by the board of equalization. The personal property and the wells of the several companies were assessed separately from the lands and mineral rights and generally without apparent inequality. The assessments upon such personal property and wells, therefore, have been left out of consideration in this discussion. Of course, to arrive at the total assessment of any owner, the amount of such additional assessment must be added to the valuation as stated herein.

Viewed from any angle, the inequality of which plaintiffs complain is so great that the assessment of their property cannot be upheld.

The judgment is reversed.

Plummer, J., and Hart, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 23, 1928.

All the Justices present concurred.