[Civ. No. 27037. Second Dist., Div. Three. July 24, 1964.]

ALBERT A. BEST et al., Plaintiffs and Appellants, v. COUNTY OF LOS ANGELES et al., Defendants and Respondents.

Holbrook, Tarr & O'Neill and Francis H. O'Neill for Plaintiffs and Appellants.

Harold W. Kennedy, County Counsel, and A. R. Early, Deputy County Counsel, for Defendants and Respondents.

FILES, J.—This action was brought by several persons owning homes in that part of Los Angeles known as Brentwood to recover property taxes paid under protest for the tax year 1960-61. Plaintiffs' contention is that the assessment made by the county assessor as of the first Monday in March 1960 increased the assessments on land in the Brentwood area so as to raise their taxes about 25 per cent above those required to be paid on similar property in the adjacent Riviera and Pacific Palisades areas, and that the board of supervisors, sitting as a board of equalization, arbitrarily refused to correct these assessments.

At the trial of this action, which was before the court sitting without a jury, the only evidence received was the record of the proceedings before the board of equalization, including exhibits. The trial court concluded that there was substantial evidence in that record to sustain the decision of the board and gave judgment for defendants, from which plaintiffs have appealed.

The legal standard by which the action of the board may be reviewed judicially was stated in *Bank of America* v. *Mundo*, 37 Cal.2d 1, 5 [229 P.2d 345] : "The duty of determining the value of the property and the fairness of the

assessment is confided to the appropriate county board of equalization. ■ Furthermore, in discharging this duty, the board's determination upon the merits of the controversy is conclusive; the taxpayer has no right to a trial de novo in the superior court to resolve conflicting issues of fact as to the taxable value of his property. [Citations.] ■ ■ The question presented to the superior court in such an action is whether there was evidence of sufficient substantiality before the board to justify the finding [citation], and in the absence of fraud or malicious or arbitrary use of its powers the board is the sole judge of questions of fact and of the values of property. [Citation.]''

■ In the proceeding before the board of equalization the burden was upon the taxpayers to show that the assessments were improper. (*Merchants Trust Co.* v. *Hopkins,* 103 Cal.App. 473, 478 [284 P. 1072]; *Wild Goose Country Club* v. *County of Butte,* 60 Cal.App. 339, 342 [212 P. 711].) ''It is a rule applicable to assessors and to boards having assessing powers that it is presumed that the assessing officers have properly performed the duties entrusted to them and, consequently, that their assessments are both regularly and correctly made.'' (*Utah Construction Co.* v. *Richardson,* 187 Cal. 649, 654 [203 P. 401].)

The record of the proceeding before the board in this case includes the following evidence:

Mr. Howard Martin, a qualified real estate appraiser employed on behalf of plaintiffs, made a study of sales of single family residential properties in the Brentwood, Riviera and Pacific Palisades areas over an 18-month period. He examined 183 sales in the Brentwood area and 179 in the other areas and compared the sale price in each instance with the 1960 assessed valuation of the property.

He found that the ratio of assessed valuation to sale price in the Brentwood area ranged from a high of 27.9 per cent to a low of 16 per cent, with a median of 20.5 per cent. For Riviera and Pacific Palisades the range was from 25.6 per cent to 10.6 per cent, with a median of 16.36 per cent. His investigation indicated that the assessed values given to improvements in the Brentwood area were approximately equal to the values given in the adjacent areas, and that the inequality grew out of differences in the assessment of land values. In Mr. Martin's opinion, based upon his studies, land was being assessed in Brentwood on an average of 92 per cent higher than land in Riviera and Pacific Palisades, in relation

to sale prices. He found nothing to justify increases in assessed values of land in Brentwood which would not justify similar increases on the properties in the adjacent areas.

There had not been a general increase in assessed valuations of land in Brentwood since 1955. Mr. Martin expressed the opinion that between 1949 and 1960 there had been a gradual and continuous rise in sale prices in Brentwood at the rate of about 5 to 8 per cent per year.

Deputy County Assessor Hilton testified that he had been in charge of a reevaluation of the land in Brentwood for 1960. He had personally inspected practically every property in the area. He testified, ''We gave consideration to everything that we felt had an effect on market value and valued the properties accordingly.'' He said the purpose was to establish values as of the first Monday in March 1960, and that values were equalized on the available data. He estimated that the increase in assessed value of Brentwood land in 1960 was between 75 and 90 per cent over 1959 on the average. This would mean an increase of between 25 and 30 per cent in the total assessed value of improved property.

Mr. John Quinn, County Assessor, testified that there were some 1,700,000 parcels of property to be assessed in the 4,100 square miles which comprise the county, and that his staff was unable to make a complete reevaluation of every parcel every year. He had developed an orderly plan for making a special reappraisal of some portions of the county each year. For this purpose the assessor checked all sales in the area, talked to property owners, and consulted with lending institutions and real estate brokers and appraisers. Rental surveys were made, incomes from property were analyzed, and the future development of the area was projected. In addition to reappraising those areas studied under the general plan in a given year, special attention was given to localities where drastic changes in property values were to be expected, as, for example, localities where there had been zoning changes, new subdivisions or new shopping centers. The assessor's purpose in following this practice was to reappraise as speedily and thoroughly as possible throughout the entire county, and to equalize values of all property as promptly as possible. More than 400,000 parcels were reappraised for the 1960 assessments.

Mr. Quinn testified that Brentwood had been one of the portions of the county which had been the subject of reappraisal in 1960 under the general plan. Riviera and Pacific Palisades were not a part of the area reappraised in 1960.

Although Mr. Quinn did not say so, the inference is that where there had been no reappraisal the assessor used the previous year's assessment for lack of anything better.

No evidence was offered as to the value of any of the property owned by any of the plaintiffs. Nor was there any evidence offered as to the ratio between assessed valuation and sale prices in the county generally.

Plaintiffs argue that since the evidence shows a substantial discrepancy between assessment ratios in Brentwood and assessment ratios in the adjacent areas, and since the assessor testified that all land assessments in Brentwood had been equalized, it necessarily follows that each of the plaintiffs is the victim of discrimination in relation to property owners in Riviera and Pacific Palisades. Assuming that to be conclusively proved, it does not follow that plaintiffs are entitled to relief. The test is not inequality as compared to neighboring property, but inequality as compared to the county as a whole. (*Wild Goose Country Club* v. *County of Butte*, 60 Cal.App. 339 [212 P. 711]. See *A. F. Gilmore Co.* v. *County of Los Angeles*, 186 Cal.App.2d 471, 476 [9 Cal.Rptr. 67]; *Alpaugh Irr. Dist* v. *County of Kern*, 113 Cal.App.2d 286, 294 [248 P.2d 117]; *Birch* v. *County of Orange*, 88 Cal.App. 82 [262 P. 788].)

In the *Birch* case the court overturned an assessment upon the ground that uncontradicted evidence showed that plaintiffs' property was assessed for a greater percentage of its value than other property in the county generally. The court there stated the rule thus (at pp. 85-86): "The mere fact, however, that a few other properties are assessed much lower in proportion to value than those of the plaintiffs, while showing at least constructive fraud, is not a sufficient ground for reducing plaintiffs' assessment. 'To equalize is to make equal, to cause to correspond, to be like in amount or degree, *as compared with something.*' (*Wells Fargo & Co.* v. *Board of Equalization*, 56 Cal. 194, 196.) Obviously, in determining whether an unequal burden of taxation has been placed upon him, a complaining taxpayer's assessment is to be compared with the average assessment of all the other properties in the county. (*Wild Goose Country Club* v. *County of Butte*, 60 Cal.App. 339 [212 P. 711]; *Mahoney* v. *City of San Diego*, 198 Cal. 388, 397 [245 P. 189].) Of course, if the taxpayer shows that his property is assessed at a greatly higher proportion of its value than that of several other persons, the inference may arise therefrom, in the absence of evidence to

the contrary, that his assessment is disproportionate to the assessments of the county as a whole but, when it is shown that his assessment is not disproportionate to that of other property generally, to reduce his assessment merely because the property of a few others is assessed too low would only increase the inequalities already existing in the assessment-roll of the county.''

In *Wild Goose Country Club* v. *County of Butte, supra,* the court said (60 Cal.App. at p. 349): ''The law certainly does not contemplate that a taxpayer, whose lands are assessed at the same relative value as other lands generally in the county, is entitled to have his assessment reduced to the level of a comparatively small number of parcels which are assessed at a low figure.''

▆▆ In the case at bench, the plaintiffs' evidence of disparity between their property and some other property was met by the assessor's explanation as to how this disparity came about. The assessor explained that in his program of systematic revaluation over a period of years, he endeavored to give first attention to those areas which seemed to need it most. In addition, where there had been substantial improvements or commercial developments or changes in zoning, the property had been reappraised even though not in the areas selected for special study. Brentwood was one of the areas given special attention in 1960. This study resulted in a 1960 increase in assessed valuation of Brentwood homes (land and improvements) amounting to 25 to 30 per cent over the preceding year. This was the first general reappraisal in Brentwood since 1955. The increase in assessments was not disproportionate to the increase in sale prices in the area which, according to Mr. Martin, was something in the range of 25 to 40 per cent for that five-year period.

Pacific Palisades and Riviera had not been the subject of recent study, and Mr. Martin's figures support the inference that in those areas sale prices had risen while assessments stood still. But the homes which were shown to have benefited from the assessor's lag constitute only a tiny fraction of Los Angeles County.

In order to draw the inference that Brentwood property was assessed at a higher rate than property in the county generally, it is necessary to assume that the Brentwood-Pacific Palisades-Riviera situation is typical of the county as a whole. Plaintiffs point to the fact that the assessor changed the assessments of only 400,000 out of 1,700,000 parcels in 1960. Plain-

tiffs' criticism of the assessor's method assumes that the other 1,300,000 parcels, or a substantial portion of them, had increased significantly in cash value since the last time the assessments had been changed.

There is no evidence that property elsewhere had risen as rapidly as it had in Brentwood, Riviera and Pacific Palisades. It was not necessary for the board to assume that that had occurred. Moreover, the board had the assessor's testimony that in the localities where he expected to find rapid changes in value, he had made reexaminations. It was the function of the board to weigh the evidence and to determine what reasonable inferences were to be drawn from the facts in evidence. From the evidence before it the board could infer that Brentwood had not been overassessed, but that Pacific Palisades and Riviera had been underassessed in relation to the county as a whole, and that the discrepancy in favor of these relatively small areas was insubstantial in relation to the county as a whole. On this record a court cannot say that the board exceeded its powers when it concluded that plaintiffs had failed to sustain their burden of proving that they had suffered unlawful discrimination. (Cf. *Alberts* v. *Board of Supervisors*, 193 Cal.App.2d 225 [14 Cal.Rptr. 72].)

Some of the plaintiffs testified before the board that their property was subject to special conditions which depreciated its value. Mr. Best testified that to the rear of his home was a ravine which was unusable. Mrs. Costello testified that her home received an unusual amount of noise from the San Diego Freeway. Mr. Heuter testified that the nearby apartments on Granville caused extra traffic and parking in front of his house. Mr. Horwitz said the increased traffic on Bowling Green harmed his property. All protested the increase in 1960 assessments over the 1959 figure. None of these four offered any evidence of the market value of his property, or any evidence that the ratio of assessment to market value was greater for his property than for the county generally. On this record, the board acted within its lawful power in determining that none of the plaintiffs had established that his assessment was excessive.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied August 20, 1964, and appellants' petition for a hearing by the Supreme Court was denied October 7, 1964.