51 Cal.Rptr. 753]

[Civ. No. 29151.   Second Dist., Div. One.   Apr. 19, 1966.]

WEB SERVICE CO., INC., et al., Plaintiffs and Appellants, v. COUNTY OF LOS ANGELES et al., Defendants and Respondents.

Greenbaum, Baker & Ancel and Mark G. Ancel for Plaintiffs and Appellants.

Harold W. Kennedy, County Counsel, and A. R. Early, Deputy County Counsel, for Defendants and Respondents.

FOURT, J.—This is an appeal from a judgment which, in effect, sustained a determination by the Los Angeles County Board of Equalization that appellants-taxpayers were not entitled to a reduction of 1961 property tax assessments upon certain washers and dryers.

Appellants brought the action by virtue of the provisions of section 5138, Revenue and Taxation Code. They sought to recover taxes based on the disputed assessments which had been paid under protest. Also the charge was made that the board was guilty of express fraud. The judgment in the superior court sustained the board's decision, found that the board's rulings with respect to certain evidence were correct, found that there was substantial evidence in the record of the board's proceedings to the effect that the challenged assessments were not excessive and, further, while acting as a trial court rather than on review the court received evidence and found that the board was innocent of express fraud.

The issues are (1) whether there was substantial evidence to support the decision of the county board, and (2) whether the board committed prejudicial error in its rulings with reference to the receipt or exclusion of certain evidence.

The trial judge, at the conclusion of the hearing in court, filed a memorandum of decision which we here set forth in large part:

"In 1961, plaintiff Web Service Co., Inc. filed the required Business Property Affidavit setting forth the value of money on hand and inventories and the net value of office furniture and equipment, fixtures, and machinery and equipment (plaintiffs' Exhibit 9b), and executed the Assessor's Property Statement (plaintiffs' Exhibit 9c). It was stipulated that the terms 'value' and 'net value' refer to book values. The values of the various assessed property as shown by the Business Property Affidavit and the assessed value of each as shown by the Assessor's Property Statement as follows:

| | "Value (Business Prop. Affid.) | Assessed Value |
|---|---|---|
| "Money | $ 275.00 | $ 140.00 |
| "Inventories (Merchandise) | 12,258.00 | 5,520.00 |
| "Office Furniture and Equipment | 6,863.00 | 3,130.00 |
| "Shop Equipment | 626.00 | 410.00 |
| "Machinery and Equipment | 554,697.00 | 271,030.00 |
| | $574,719.00 | $280,230.00 |

"At the brief hearing before the Board of Equalization covering only three pages of reporter's transcript (plaintiffs' Exhibit 9e), the Deputy Assessor testified that the only papers used to determine the taxed value of the property were the affidavit of the taxpayer and the property statement, i.e.,

plaintiffs' Exhibits 9b and 9c, and that from these the Assessor arrived at the fair market value of $560,465.00 on all the property and that this was assessed at 50% or $280,230.00.

"Plaintiffs do not complain of the valuation of their personal property by the Assessor but do complain and sought to establish at the hearing before the Board of Equalization that the tax burden imposed on their tangible personal property exceeded the tax burden generally imposed on real property in Los Angeles County in proportion to the actual value of such property in violation of Article 13, Section 14 of the California Constitution.

"Plaintiffs concede that the Assessor is not required to assess at 100% of market value so long as the assessment is in proportion to the worth of the property and so long as all taxpayers are treated alike and assessed in the same proportion.

"By stipulation the testimony of the Assessor at the former hearing was incorporated in this proceeding by stipulation to the effect that all property was assessed at 50% of his opinion of its market value. Pursuant to this stipulation and upon the presumption that the assessment is fair, this Court is obliged to find that there is in the record substantial evidence to support the Board's determination providing that the record does not disclose a lack of substantive due process by a refusal of the Board to receive admissible evidence on one of the issues upon which the plaintiffs had the burden of proof, viz, the ratio of assessment values to fair market values prevailing generally throughout the country.

"There was some evidence offered and received by the Board as to the prevailing ratio of assessed value to the fair market value. This evidence includes plaintiffs' Exhibit 10b, a list of 52 verified sales of residential properties in various areas showing ratios ranging from 22% to 32.5% and mostly about 24%; also plaintiffs' Exhibit 10a, a list of 158 verified sales of residential properties in various areas showing ratios of assessed market value of about 24%.

"The proffered and refused evidence which plaintiffs contend constituted a denial of due process as best the Court can determine from the confused transcript is primarily the following:

"A. 1957 census study (plaintiffs' Exhibit 8c).

"This exhibit purported excerpt from a study prepared by the United States Bureau of Census in 1957 which purported

to find a ratio of 18.5%, objection to which was proper for many reasons, primarily because it was too remote.

"B. 1960 State Board of Equalization Report.

"Plaintiffs asked the Board of Equalization to take 'judicial notice' (more properly 'official notice' in an administrative proceeding) of the State Board of Equalization figures of the prior year which were published (plaintiffs' Exhibit 21 for identification) and show a 23.3% ratio in Los Angeles County. The Assessor objected on the ground that the State Board's figures were based on a 1958 inadequate sampling and further upon the ground that the 1960 figures were irrelevant to the 1961 valuations.

"The published annual report of the State Board of Equalization apparently falls within Code of Civil Procedure Sec. 1875(3) but we cannot find in the record anything more than plaintiffs' request that official notice be taken thereof and there is a vast difference between official notice and official knowledge.

"Probably because taxes are the lifeblood of government, decisional law has strewn the path of objecting taxpayers with innumerable and virtually insurmountable roadblocks.

"An extreme example is *Southwest Land Co.* v. *Los Angeles County,* 46 Cal.App. 9 [188 P. 577] (hearing den.), in which the Court held that a prior year's assessment ten times more than the current year assessment was not admissible to prove a mistake in the current year assessment. The ground of decision was that each year's assessment was separate and complete.

"While the 1960 State Board of Equalization tabulations might properly have been admissible (*Rancho Santa Margarita* v. *San Diego County,* 135 Cal.App. 134, 141 [26 P.2d 716]), there is no evidence that the Board did not consider the 1960 State Board tabulation as requested by plaintiffs or that it was not considered by them in reaching their decision. (*Rancho Santa Margarita* v. *San Diego County, supra,* p. 143.)

"C. 1961 State Board of Equalization Tentative Report.

"Plaintiffs' principal contention as to the denial of due process is the refusal of the Board of Equalization to order the Assessor to disclose the ratio of assessed value to market value for the year 1961 as set forth in a tentative report of the State Board of Equalization which was sent to the County Assessor just a few days before the hearing of the instant matter. Unquestionably, this was tentative only and the Assessor testified that he had not given it any consideration.

"The Assessor's objection to a disclosure of this report was that the tabulation was tentative only and was privileged, and this objection was sustained by the Board.

"The admissibility of a State Board tentative report appears to be pending decision before the District Court of Appeal in *Shonborn* v. *County of Los Angeles*—Second Civ. No. 27059, and in *Leach Corp.* v. *County of Los Angeles*—Second Civ. No. 27669, neither of which have been decided.

"Plaintiffs' attempt to get this report before the Board is found beginning at page 95 of plaintiffs' Exhibit 5, it being stipulated in the instant matter that a similar demand had been made.

"Quite apart from defendants' objection of privilege, which we think was well taken, there was no offer of proof by plaintiffs as to what the tentative report disclosed and it is the generally accepted rule that refusal to receive evidence is not reversible error in the absence of an offer of proof thereof.

### "CONCLUSION

"The way of the taxpayer in questioning an assessment, like that of the transgressor, is hard. At the Board of Equalization level he is confronted by a harassed Board of Supervisors, ordinarily a legislative and executive body, sitting in a quasi-judicial capacity, confronted with a veritable deluge of petitions for re-assessment which must be cursorily heard and determined within a restricted time. He is virtually at the mercy of the Assessor as to determining the countywide average of assessed value to market value for the tax year in question. And in a review such as this proceeding, he must overcome the presumption that official duty has been regularly performed. It is to be sincerely hoped that the use of Tax Boards of Appeal will afford the taxpayer a better opportunity to present his contentions.

"Restricted as is this Court in this type of review, it has no alternative on the record before it except to sustain the action of the Board of Equalization and grant judgment for the defendants.

"Since the foregoing was written, decisions have been filed in the Leach Corporation and Shonborn cases referred to on page 5 hereof. The opinion in *Leach Corp.* v. *County of Los Angeles*—Second Civ. No. 27669, filed July 23, 1964, answers adversely practically every contention of plaintiffs herein as to the denial of substantive due process on rejection

of evidence. The Shonborn opinion having been certified for non-publication may not under Rule 976 be cited but it too is adverse to plaintiffs' contentions.''

■ There can be no question that there was sufficient substantial evidence before the board to support its determination. A deputy assessor testified that the fair market value of the property assessed herein was $560,465 and that it was assessed at 50 percent of that market value, namely, $280,230. There was evidence that other personal property throughout the county was assessed in 1961 at 50 percent of its fair market value and that all real property in the county was assessed at 50 percent of the amount determined by the assessor to be its fair market value. The assessor testified that of 1,700,000 parcels of real property assessed in the county, 431,000 valuations had been changed in 1961, about 450,000 had been changed in 1960, about 450,000 had been changed in 1959 and about the same number in 1958. He further testified that all property in the county was assessed in 1961 at the same fraction of its value, namely, 50 percent of the amount determined by the assessor to be its fair market value.

■ It is appropriately stated in *Leach Corp.* v. *County of Los Angeles,* 228 Cal.App.2d 634, 637, 640-641, 642-643, 644-646 [39 Cal.Rptr. 654] :

''The assessment is presumed to be fair and lawful and the burden rested upon the taxpayer-plaintiff to prove the contrary. [Citations.] The question before this court is whether the record contains substantial evidence to support the implied findings of the board, not whether the evidence preponderates in that direction. [Citations.] ■ The presumption that the assessor did assess all properties fairly and upon an equal basis will sustain the board's implied finding to that effect unless that presumption is overthrown by evidence to the contrary. [Citations.]

''Appellant called as witnesses Assessor John R. Quinn, Mr. Lawrence M. West, Chief of Business Division of the Assessor's Office and Chief of Business and Personal Property Appraisal, and Mr. Sorrentino, Deputy Assessor. The taxes involved are those for the year 1960-61.

''.  .  .  .  .  .  .  .  .  .  .  .

■ ''. . . Market value necessarily is a matter of opinion. The foregoing evidence establishes that all property—real, personal and mixed—is assessed at 50 per cent of the market value placed upon it by the assessor.

"This assessor had been in office many years, but it is now suggested that his opinion of market values is to be disregarded because no proper foundation was laid for the same. There are several answers to this claim. No objection to the qualification of the witness was made by appellant at any time before appeal, hence it comes too late. [Citations.] 'The qualification of a witness to state his opinion may be waived . . . by failure to object to the testimony when offered.' (32 C.J.S. § 458, p. 99.) Moreover these witnesses were called by plaintiff and counsel asked them for their conclusions without inquiring into their qualifications as experts; this necessarily amounted to a waiver of a showing of such expert knowledge. While plaintiff may not have been bound by the evidence of these presumptively adverse witnesses, their evidence is in the case to be valued for what it is worth. This testimony, standing alone, is not only substantial evidence but is enough to sustain the judgment even in the face of a conflict. [Citations.]

". . . . . . . . . . . . . .

". . . Assessment for tax purposes is a continuous process which normally reflects many changes each year. It is not a static thing. [Citations.] The remoteness of the dates of sales and consideration of the limited number of parcels throws sufficient doubt upon these results to warrant, if not require, a holding that they do not possess sufficient substantiality and credibility to overthrow the implied finding of the board based upon the testimony of the assessor and his assistants.

". . . . . . . . . . . . . .

"Denial of procedural due process is claimed as the result of exclusion of certain evidence. Respondent seems to concede that exclusion of substantial material evidence by the board would amount to a denial of due process in a tax equalization proceeding. [Citations.]

"Appellant's alleged grievance grows out of counsel's unsuccessful efforts to uncover certain preliminary tabulations of the ratio of assessed value to full cash value of locally assessable, tangible property in the various counties, which tabulations were made by the State Board of Equalization pursuant to sections 1817 and 1818, Revenue and Taxation Code.[2] Section 1818 concludes with the statement: 'All such

---

"[2] §1818. The board shall each year prepare tabulations showing for each county the ratio of assessed to full cash value of locally assessable

tabulations shall be open for inspection by all persons interested,' and appellant claims to be such an 'interested person.' The relationship of this portion of section 1818 to other sections is important. Section 1817 provides: 'The board shall annually estimate any change that may have occurred in the full cash value of locally assessable tangible property between the lien date of the roll for which the last survey was made pursuant to section 1815 and the lien date of the current roll. . . .' and specifies that this shall be done by the third Monday in July of each year and that a statement of the board's determination relating to his county shall be transmitted to each assessor. Section 1819 provides that not later than August 1 the board shall give the assessor a reasonable opportunity to examine and discuss with the board that portion of the tabulations affecting property in his county. Then it says: 'After making any adjustment it deems appropriate as the result of such discussion, but not later than September 2d, the board shall make available for public inspection all such tabulations and shall publish the ratio of assessed to full cash value of locally assessable tangible property for each county.'

``.    .    .    .    .    .    .    .    .    .    .    .    .    .

"The objection was sustained and the evidence excluded. Counsel for appellant went no further; did not attempt to force production of the document or to otherwise gets [*sic*] its contents before the board; but the subject had been ruled out and the question remains whether appellant is one of the 'persons interested' as that phrase is used in section 1818 or whether it must wait for inspection until the final tabulation is made available for public inspection under section 1819.

"Departmental Regulation 2703 provides[3] that during the period between transmittal of estimates pursuant to section 1817 and the 1st of September said tabulations 'pertaining to the county are open to and available for inspection during

---

tangible property. The tabulations shall show, in such a way as to prevent identification of individual parcels, the ratio of assessed to full cash value of each parcel of such tangible property in the sample of any survey in the county made in the last year pursuant to section 1815. The tabulations shall also show the derivation of the total full cash value of the locally assessable tangible property on the current roll from the total full cash value of the locally assessable tangible property on the roll of a prior year pursuant to section 1817. All such tabulations shall be open for inspection by all persons interested."

"[3]Portions of State Board of Equalization regulations for equalization proceedings, found in Appendix 'B' to respondents' brief, page 2 thereof."

regular business hours at the office of the board in Sacramento, by the county assessor, any deputy assessor designated by him, any official or employee of the county designated by the board of supervisors and any official or employee of a taxing agency within the county designated by its governing body.'

"Regulation 2705 says: 'After making any adjustments it deems appropriate as the result of the discussion, but not later than September 2d, the tabulations pertaining to all counties shall be available for public inspection during regular business hours at the offices of the board in Sacramento.'

"*Mayer* v. *Board of Trustees,* 195 Cal.App.2d 420, 431 [15 Cal.Rptr. 717] : 'The contemporaneous construction of a statute by those charged with its enforcement and interpretation, although not necessarily controlling, "is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized." [Citations.] As a contemporaneous construction, and because he was charged with the duty of rendering an opinion with respect to its meaning, the interpretation of the subject statute by the attorney general in 1936 is entitled to great respect. [Citations.]'

"The matter seems satisfactorily clarified by an interdepartmental communication of May 25, 1960, addressed to the Secretary of the State Board of Equalization and prepared by Assistant Attorney General Dan Kaufmann. (Appendix 'A' to respondents' brief.[4]) It says in part: 'The legislative intent is clearly to provide the assessors with a reasonable opportunity for examination and discussion. Obviously, tabulations must be completed prior to the time of the discussions. The task of preparing the tabulations is an extensive one. If the board had to furnish the results to the assessors and afford the assessors an opportunity for examination and discussion before August 1st the time element would be such that it is extremely doubtful the assessors could be afforded a reasonable opportunity for examination and discussion. On the other hand, if the tabulation must be completed by August 1st, but need not be available for public inspection before September 2d, the legislature has provided at least a 32 day period in which a reasonable opportunity for examination and discussion exists. This is the only reasonable construction of the section.

---

"[4]The fact that this is not a published opinion does not detract from its logic."

" '4. Section 1818 provides that all tabulations prepared by the board as required by this provision of the law "shall be open for inspection by all persons interested." On the other hand, section 1819 specifically provides that "not later than September 2d" the board shall make available *for public inspection* all such tabulations. Section 1818 does not provide for public inspection, but merely for inspection by all persons interested. Moreover, the tabulations prepared under section 1818 are preliminary in nature because they are subject to adjustment under the provisions of section 1819 after discussions with the assessors. It is the completed tabulation which is ultimately made available for public inspection, and according to the express terms of section 1819 this must be done not later than September 2d.' "

█ Appellants attempted to introduce into evidence at the board hearing certain items which were rejected. For example (1) a 1957 United States Census Bureau publication showing a 1956 county ratio of assessed to fair market value, (2) a list showing the estimated future building costs set forth on 12 building permits issued in 1950-1959, (3) a mimeographed copy of an alleged speech, (4) the determination of the average ratio of assessed value to full cash value in Los Angeles County made by the State Board of Equalization for the year 1960 on the basis of a 1958 sampling which included less than 1-40th of 1 percent of the parcels in the county, (5) an expert opinion (partly in affidavit form) where no adequate foundation was made of qualification, training or experience to appraise real property. It is clear that in (1) the item was irrelevant for by 1961 the county had been reassessed; in (2) appellants offered no foundation with reference to the qualifications or identity on the persons who made the valuations, estimates; furthermore, the estimated cost in 1950-1959 is not competent evidence of the 1961 value of the completed buildup; in (3) the speech was clearly hearsay, and it was not shown that the speaker was unavailable; in (4) the determination was wholly unreliable because of statistically inadequate samples, and, furthermore, it did not have to do with the year in question, and in (5) the witness who made the affidavit testified that he was a former deputy assessor and had no experience as a qualified real property appraiser, his opinion was based on 381 sales of real property, that he had not seen the properties, had not verified any sales prices and did not know the size, frontage, type of construction, building age,

square footage or condition of the buildings located on any of the properties sold.

Appellants also requested the board to order the assessor to disclose the tentative determination made by the State Board of Equalization, pursuant to section 1817, Revenue and Taxation Code, with reference to the ratio of assessed to full cash value of locally assessable tangible property in the County of Los Angeles for the current assessment year 1961. The tentative determination was not at that time final, had not been made public nor available for public inspection pursuant to section 1819, Revenue and Taxation Code, nor had the state board otherwise authorized its disclosure. The board properly refused to compel the assessor to disclose the evidence. (See *Leach Corp.* v. *County of Los Angeles, supra.*)

In the court hearing appellants called four members of the board as witnesses. No useful purpose would be served in extending this opinion by setting forth the questions which were put to the board members. Suffice it to say, the rule is that a question asking for the personal knowledge of a board member of certain matters at the time of the hearing is improper. (See *Chicago, Burlington & Quincy Ry. Co.* v. *Babcock,* 204 U.S. 585, 593 [27 S.Ct. 326, 51 L.Ed. 636, 638-639] ; 8 Wigmore (3d Ed. 1940) §§ 2345, 2346, 2349.)

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.