[Civ. No. 26350. First Dist., Div. One. Mar. 13, 1970.]

GLIDDEN COMPANY, Plaintiff and Appellant, v.
COUNTY OF ALAMEDA, Defendant and Appellant.

374

## COUNSEL

Johnston, Platt, Klein & Horton, Johnston, Klein & Horton, Robert D. Platt and V. Judson Klein for Plaintiff and Appellant.

Richard J. Moore, County Counsel, and Joseph P. Bingaman, Deputy County Counsel, for Defendant and Appellant.

## OPINION

**SIMS, J.**—In this taxpayer's action to recover taxes paid under protest (see Rev. & Tax. Code, § 5138), The Glidden Company, an Ohio Corporation, as taxpayer, and the County of Alameda which received the taxes so paid, have each appealed from a judgment which vacated the decision of the Board of Supervisors of the County of Alameda sitting as a county board of equalization (see Rev. & Tax. Code, §§ 1601-1616) upholding the assessment upon which the taxes were levied against the taxpayer, and remanded the matter for a full new hearing to the assessment appeals board of the county, as successor of the former board (see Rev. & Tax. Code, §§ 1620-1629 and Stats. 1966, First Ex. Sess., ch. 147, p. 648).

The taxpayer contends that the trial court should have entered a money judgment in its favor because the evidence at the earlier equalization hearing established conclusively that the taxpayer was entitled to have the ratios of assessed to fair market value established by the State Board of Equalization for the county in the taxable years in question (1963, 1964 and 1965) applied to the fair market value of its property as determined by the county assessor.

The county asserts that the trial court should have entered judgment in its favor because the record before the county board of equalization, as pre-

sented to the trial court in this action, was sufficient to afford an adequate review, and was sufficient to sustain the board's decision upholding the assessment.

■■ It is concluded that the taxpayer is not entitled to have his property assessed in accordance with the assessment ratio fixed by the state board in the absence of a showing that the fair market value, upon which the assessor predicated the assessment, was equal to the full cash values ascertained by the state board for the purpose of determining its assessment ratio for inter-county equalization; and that the failure of the taxpayer to introduce any other evidence to show that its property was not uniformly assessed with other similar property in the county necessitates an affirmance of the action of the local board in approving the assessment, and a judgment against the taxpayer. The judgment must be reversed and corrected accordingly.

*Statement of Facts*

The following facts alleged by the taxpayer were admitted either by the county's answer or a subsequent stipulation: The county assessor originally made and listed on the assessment roll for each of the indicated years the following assessments of business inventory of the taxpayer located in the taxing county on the lien date for such year: 1963—$255,050, 1964— $225,223, and 1965—$203,118. In February of 1966 the assessor caused the assessed values of the taxpayer's inventory to be increased to the following amounts: 1963—$701,236, 1964—$570,480, and 1965—$597,818.[1] These figures concededly resulted in additional assessments of $446,200, $345,250, and $394,700, respectively, or an aggregate additional assessment of $1,186,150 against which were levied taxes and penalties of $107,-509.34. This sum was paid by the taxpayer subject to its protest as to $77,833.08, which represents the tax and the penalty on so much of the value of additional assessment as the taxpayer claims was improperly assessed.

---

[1]At that time section 531.3 of the Revenue and Taxation Code provided as follows: "If the assessor requires an assessee to describe personal property in such detail as shows the cost thereof but the assessee omits to report the cost of the property accurately, notwithstanding that this information is available to the assessee, to the extent that this omission on the part of the assessee causes the assessor not to assess the property or to assess it at a lower valuation than he would enter upon the roll were the cost reported to him accurately, that portion of the property as to which the cost is unreported, in whole or in part, may be assessed as property that has escaped assessment." (Stats. 1959, ch. 1153, § 3, p. 3246, repealed Stats. 1967, ch. 1418, § 14, p. 3338. Section 12, p. 3337, of the last cited chapter modified the final phrases to read "shall be assessed as required by law," added provisions relating to penalties and interest and readopted the remaining provisions as section 507 of the code. By Stats. 1969, ch. 1557, § 1, p. 3164, the section was renumbered section 531.3.) All further references are to sections of the Revenue and Taxation Code.

Before paying the taxes levied against the additional assessment the tax-payer filed its written application for a reduction in assessment with the county board of supervisors sitting as a board of equalization, and on March 22, 1966, the board met to hear the taxpayer's application and equalize the additional assessment.

At the hearing the taxpayer's attorney announced, "You will be glad to know that we have but one issue in this case today. That is the ratio issue. We do not quarrel with your jurisdiction to make an escape assessment in this case. That is not an issue today. We do not quarrel with the Assessor's opinion of fair market value. That also is not in issue today." Thereupon, he established through the testimony of a deputy assessor that the following figures represented the county assessor's opinion of the fair market value of the total property to which the additional assessments related: 1963—$1,753,089, 1964—$1,426,199, and 1965—$1,494,953. Comparison of these sums with the total assessments used to compute the additional assessments, reveals that the total assessment for each year represents 40 percent of the assessor's opinion of market value.

The remainder of the hearing was devoted to the presentation of evidence to establish the ratio of assessed to full cash value of locally assessable property in Alameda County for the years in question as determined by the State Board of Equalization for the purpose of equalizing county assessment levels. These figures as revealed by the annual reports of the State Board of Equalization which were received in evidence at the local equalization hearing were respectively 1963—21.7 percent, 1964—21.7 percent, and 1965—20.2 percent. As indicated in the report for 1964-1965, these ratios are used for the purpose of equalizing county assessment levels, for the calculation of a school district's equalization aid entitlement and of its repayment of state construction loans, and as a factor in the eligibility of a school district for construction loans.

Other material was offered by the taxpayer to show the methods by which those ratios were ascertained, and a foundation was laid for the issuance of a subpoena for the assistant executive secretary, property taxes, of the state board. This material was supplemented by an offer of proof that the witness would testify in detail concerning the methods used to compute the ratios and the accuracy of those methods. The subpoena was denied, and the local board refused to receive in evidence nine printed articles, principally concerned with inter-county equalization which had been authored by the proposed witness.

The only other proffered evidence which was rejected consisted of certified copies of statements transmitted by the state board to the assessor during the years in question. The taxpayer has failed to point out how the

excluded testimony adds to, as distinguished from serving to corroborate, facts already revealed by the material which was received in evidence.

After reviewing this record the trial court made the findings of fact and conclusions of law set forth in the margin,[2] and entered the judgment from which these cross-appeals have been taken.

*General Principles*

"All property in the State [not exempt] . . . shall be taxed in proportion to its value, to be ascertained as provided by law, or as hereinafter provided." (Cal. Const., art. XIII, § 1; and see Rev. & Tax. Code, § 201.) Prior to October 6, 1966,[3] section 401 provided, "Except as provided in

---

[2]"FINDINGS OF FACT

I. The record and exhibits do not delineate the basis for the decision of the County Board of Equalization sufficiently to enable the Court to determine whether the decision is based on lawful principles.

II. The County Board of Equalization considered, in the hearing on plaintiff's matter, certain data relating to the assessment ratio as developed in other hearings at the same session concerning the escape from assessment of property like and similar to plaintiff's property.

III. The County Board of Equalization failed to make a finding in respect to the assessment ratio used in Alameda County, the Assessor's determination of value, and other matters in such form and detail as to enable the Court to conduct an adequate and complete review.

IV. The record made before the County Board of Equalization is insufficient to permit an adequate review in the following respects: (a) The method used in arriving at the full cash value for each year in question; (b) The method used in arriving at the amount of escaped property for each year in question; (c) The method of assessing the escaped property for each year in question.

CONCLUSIONS OF LAW

I. The County Board of Equalization's failure to make adequate findings leaves the record incomplete and thwarts the Court in the performance of its review obligations.

II. A full record, made in accordance with the foregoing Findings of Fact, is needed to aid the Court in determining whether the decision of the Board is based on lawful principles.

III. The Board should, on remand, admit the testimony of duly qualified experts as to their opinions on factual, relevant matters only.

IV. The matter should be remanded to the Assessment Appeals Board of Alameda County, successor to the Board of Supervisors of Alameda County, sitting as the County Board of Equalization, for a full new hearing.

V. Each party should bear its own costs in this action."

[3]By Stat. 1966, First Ex.Sess., ch. 147, § 34, p. 658, section 401 was amended to read, "Every assessor shall assess all property subject to general property taxation from the lien date for the 1967-68 fiscal year through the 1970-71 fiscal year at a publicly announced ratio of his own choosing which shall be between 20 percent and 25 percent of full cash value. Beginning with the lien date for the 1971-72 fiscal year, he shall assess all property subject to general property taxation at 25 percent of its full cash value. Subsequent amendments added and revised the second paragraph as found in Stats. 1968, First Ex.Sess., ch. 1, § 10, p. 10. Amendments to section 1605 have put a ceiling on the ratio at which assessments may be "equalized."

this part, all taxable property shall be assessed at its full cash value." " 'Value,' 'full cash value,' or 'cash value' means the amount at which property would be taken in payment of a just debt from a solvent debtor. In determining the 'actual value' of intangible personal property, the assessor shall not take into account the existence of any custom or common method, if any, in arriving at the full cash value of any class or classes of property." (§ 110.) ■ The term "full cash value" is deemed synonymous with "market value." (*De Luz Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546, 561-562 [290 P.2d 544].) Nevertheless, the practice of assessment at a uniform fraction of full cash value, provided the latter remained the standard or basis of each assessment, is of long standing and has received judicial approval when subjected to attack on constitutional grounds. (See *County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 846-851 [59 Cal.Rptr. 618, 428 P.2d 602]. See also *A. F. Gilmore Co.* v. *County of Los Angeles* (1960) 186 Cal.App.2d 471, 475-476 [9 Cal.Rptr. 67].)

■ The value of property for assessment purposes is to be determined by the county board of equalization on such basis as is used in regard to other property so as to make all assessments as equal and fair as is practicable. (Cal. Const., art. XII, § 9; Rev. & Tax. Code, §§ 1601-1619, and see §§ 1620-1629; *Flying Tiger Line, Inc.* v. *County of Los Angeles* (1958) 51 Cal.2d 314, 320 [333 P.2d 323]; *Universal Consol. Oil Co.* v. *Byram* (1944) 25 Cal.2d 353, 356 [153 P.2d 746]; *Schwarz* v. *County of Marin* (1969) 271 Cal.App.2d 120, 122 [76 Cal.Rptr. 207]; *Griffith* v. *County of Los Angeles* (1968) 267 Cal.App.2d 837, 841 [73 Cal.Rptr. 773].) In order to carry out this principle, the assessor and the county board of equalization must apply the same ratio to market value uniformly within the county. (See *County of Sacramento* v. *Hickman, supra,* 66 Cal.2d 841, 851; and *Knoff* v. *City & County of San Francisco* (1969) 1 Cal.App.3d 184, 196 [81 Cal.Rptr. 683].)

Both parties concede that the question must be resolved on the record made before the county board of equalization. ■ "The duty of determining the value of the property and the fairness of the assessment is confided to the appropriate county board of equalization. ■ Furthermore, in discharging this duty, the board's determination upon the merits of the controversy is conclusive; the taxpayer has no right to a trial de novo in the superior court to resolve conflicting issues of fact as to the taxable value of his property. [Citations.]" (*Bank of America* v. *Mundo* (1951) 37 Cal.2d 1, 5 [229 P.2d 345]. See also *Universal Consol. Oil Co.* v. *Byram, supra,* 25 Cal.2d 353, 361-362; *County of San Diego* v. *Stiles*

(1968) 268 Cal.App.2d 261, 263 [73 Cal.Rptr. 868]; *County of Los Angeles* v. *Tax Appeals Board No. 2* (1968) 267 Cal.App.2d 830, 836 [73 Cal.Rptr. 469]; *Griffith* v. *County of Los Angeles, supra,* 267 Cal. App.2d 837, 841; *Best* v. *County of Los Angeles* (1964) 228 Cal.App. 2d 655, 657 [39 Cal.Rptr. 665]; *A. F. Gilmore Co.* v. *County of Los Angeles* (1960) 186 Cal.App.2d 471, 477 [9 Cal.Rptr. 67]; *Eastern-Columbia, Inc.* v. *County of Los Angeles* (1945) 70 Cal.App.2d 497, 503-504 [161 P.2d 407].)

*Effect of State Board of Equalization Assessment Ratio*

The taxpayer asserts that its proof of the ratios established by the State Board of Equalization for the county during the years in question conclusively demonstrates that the assessments made by the assessor, and approved by the county board of equalization are excessive because they rest upon an assessment ratio, 40 percent, which is almost twice as high. The taxpayer's proof seeks to compare apples with bananas. The ratio required by law for intra-county equalization is predicated upon the relationship between the total market value as appraised by the *assessor,* and the total assessed valuation listed by him. The ratio required by law for inter-county equalization, and to enable the State Board of Equalization to perform its constitutional function (Cal. Const., art. XIII, § 14) of assessing certain public utilities, is predicated upon the relationship between "the total full cash value of all locally assessable tangible property" as determined by the *board* from "the full cash value of a sample of locally assessable tangible property" (§ 1815) and "the total assessed value of the tangible property on the current local roll" (§§ 1817 and 1818). ■ It is obvious that different·standards of valuation of market value or cash value will produce different ratios, and, what is more important, can produce different ratios without affecting the uniformity of assessment within the county. The discrepancy between the 40 percent used by the assessor and the lower figure found by the State Board of Equalization may be caused by a uniformly low appraisal of the cash value of the tangible property on the tax rolls, including that of the taxpayer.

The county seeks to establish that the figures for fair market value of the business inventories which were testified to by the deputy assessor were arrived at by deducting 15 percent from the actual cost to the taxpayer of the goods on hand in 1963 and 1964, and 20 percent in 1965. The record fails to reveal any such evidence in the proceedings involving this taxpayer, and the record is clear that although several taxpayers' suits were consolidated for hearing each was to stand on its own record before the county board of equalization, except where in those proceedings, other evidence had been expressly incorporated.

Nevertheless, that there is room for differences of opinion is manifest from the handbook on "The Appraisal of Equipment and Inventory" (June 1961) of the State Board of Equalization, which was introduced in evidence, it states, ". . . our present method is to accept the book value of an inventory if it (1) is physically complete, (2) reflects the property trade level, (3) reflects present-day pricing, and (4) is adjusted for realistic obsolescence. If the book value does not meet these conditions, then we, as appraisers, must estimate the adjustments necessary to make a market value estimate of the inventory." (*Id.*, p. 20. See also *Rittersbacher* v. *Board of Supervisors* (1934) 220 Cal. 535, 544-545 [32 P.2d 135]; and *Eastern-Columbia, Inc.* v. *County of Los Angeles* (1945) 70 Cal.App.2d 497, 505-508 [161 P.2d 407].)

The distinction between the two ratios has been recognized judicially. In *Griffith* v. *County of Los Angeles, supra,* it was contended that the county board of equalizaton erred in refusing to admit evidence of, or to take judicial notice of, the assessment ratios for the county which were found in studies made by the state board. The court observed, "For the most part, respondents' efforts were directed toward an attempt to show that the assessor had used improper methods; that the county ratio of assessment was different from that determined by the State Board of Equalization.

■ "Proof of the difference between the state-determined ratio, if it was a fact, and that utilized by the county, would not in itself prove a discriminatory assessment practice against taxpayers.

■ "Assessments are required to be equalized in the county as a whole, and discrepancies as between particular properties do not necessarily establish that plaintiff's assessments were unfair as compared to the county as a whole. [Citations.]

"If assessments were equalized for the county as a whole, it would make no difference whether there was a discrepancy between the county ratio or the state-determined ratio." (267 Cal.App.2d at p. 843, fn. omitted. See also *Web Service Co.* v. *County of Los Angeles* (1966) 242 Cal.App.2d 1, 8-12 [51 Cal.Rptr. 753]; *County of Amador* v. *State Board of Equalization* (1966) 240 Cal.App.2d 205, 223-225 [49 Cal.Rptr. 448]; and *Leach Corp.* v. *County of Los Angeles* (1964) 228 Cal.App.2d 634, 643-646 [39 Cal.Rptr. 654]; and note *A. F. Gilmore Co.* v. *County of Los Angeles, supra,* 186 Cal.App.2d 471, 478-479.)

The taxpayer seeks to distinguish *Griffith,. Web* and *Leach* on the grounds that in those cases the taxpayers were attempting to use other than final ratio determinations of the State Board of Equalization, and did not, as here, produce evidence of the accuracy of the calculations of the state

board. This distinction does not overcome the fact that unless it is shown that the "full cash value of all locally assessable tangible property" as computed by the state board is equal to the aggregate fair market value of the same property as appraised by the county assessor in the course of making his assessments, the difference between the assessment ratios is meaningless insofar as showing discrimination against this taxpayer is concerned.[4]

The trial court properly denied the taxpayer any refund.

*Propriety of Remand*

 When the county board of equalization has failed to use proper criteria in valuing the property interest for which equalization is sought, and there is no evidence or a conflict in the evidence from which a proper valuation can or should be made, the trial court should remand the matter to the proper local authority for further hearing. (See *De Luz Homes, Inc.* v. *County of San Diego, supra,* 45 Cal.2d 546, 574 [possessary interest in exempt property]; *Universal Consol. Oil Co.* v. *Byram, supra,* 25 Cal.2d 353, 362-364 (failure to act on evidence of valuation of oil leases]; and *County of Amador* v. *State Board of Equalization, supra,* 240 Cal.App.2d 205, 223 [market value of water rights]; but cf. *Flying Tiger Line, Inc.* v. *County of Los Angeles, supra,* 51 Cal.2d 314, 322 [judgment for refund affirmed where erroneous legal theory applied to facts by local boards]; and *Parr Richmond Industrial Corp.* v. *Boyd* (1954) 43 Cal.2d 157, 168-169 [272 P.2d 16] [*id*].)

The taxpayer points out that here, unlike *Griffith, Web* and *Leach, supra,* there is no evidence to show that the ratio, 40 percent, actually applied by the assessor to *his* appraisal of the fair market value of the taxpayer's property was uniformly applied to all assessable tangible property in the county. It contends that there is no substantial evidence to sustain the finding of the local board which upheld the action of the assessor. In

[4]Assume three lots of assessable tangible property a, b, and c with identical characteristics located in counties A, B, and C, respectively; that because of reasonable differences in the application of recognized criteria for determining market value that these lots are respectively appraised at $12,500, $8,333 and $6,250; that the respective local assessment ratios are 20 percent, 30 percent and 40 percent; and that therefore each lot was similarly assessed at $2,500. Assume also that the state board finds from sampling, and extension of its sampling, that the total full cash value of assessable tangible property in county A is 80 percent of the total market value approved by the assessor, in county B—120 percent, and in county C—160 percent, thereby indicating that its estimate of the full cash value of each lot was $10,000, and that in each county the intercounty equalization assessment ratio was 25 percent. It is obvious that the application of this ratio to the market value fixed by the particular assessor in any one of the counties would produce, not dispel, inequity.

*A. F. Gilmore Co.* v. *County of Los Angeles, supra,* the court observed, "The issue before a reviewing court is whether there was substantial evidence before the board upon which its determination could have been founded. The inquiries which the board makes are: (1) What is the fair market value of the property in question; and (2) whether the assessed value thereof is equal to the product of fair market value and the ratio of assessment values to fair market value prevailing generally throughout the county." (186 Cal.App.2d at pp. 476-477. See also *Schwarz* v. *County of Marin, supra,* 271 Cal.App.2d 120, 122; and *Wild Goose Country Club* v. *County of Butte* (1922) 60 Cal.App. 339, 343 [212 P. 711].) In the case last quoted, the court also said, "The determination of the board will not be rejected by the reviewing court if there is in the record substantial evidence to support the board's determination. Any evidence which tends to prove fair market value or the ratio of assessment values to market values would be relevant but all relevant evidence is not necessarily substantial." (*A. F. Gilmore Co.* v. *County of Los Angeles, supra,* 186 Cal.App.2d 471, 477. See also *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 635-636 [83 Cal.Rptr. 208, 463 P.2d 432]; and *People* v. *Bassett* (1968) 69 Cal.2d 122, 138-139 [70 Cal.Rptr. 193, 443 P.2d 777].)

The taxpayer concludes that in the absence of any substantial evidence to establish that the assessment was determined at a locally uniform ratio, the approval of the assessment by the county board of equalization cannot stand, and the case must be remanded to the board. (See fn. 2 above.) This conclusion overlooks those principles which necessitate a judgment for the county.

██ "The question presented to the superior court in such an action is whether there was evidence of sufficient substantiality before the board to justify the finding [citation], and in the absence of fraud or malicious or arbitrary use of its powers the board is the sole judge of questions of fact and of the values of property. [Citation.]" (*Bank of America* v. *Mundo, supra,* 37 Cal.2d 1, 5. See also *De Luz Homes, Inc.* v. *County of San Diego, supra,* 45 Cal.2d 546, 564; *Universal Consol. Oil Co.* v. *Byram, supra,* 25 Cal.2d 353, 362; *Griffith* v. *County of Los Angeles, supra,* 267 Cal.App.2d 837, 841; and *Best* v. *County of Los Angeles, supra,* 228 Cal.App.2d 655, 657.)

██ "The taxpayers has the burden of showing the board that the assessor's figures are improper and the assessments are not fair and equitable. [Citations.]" (Griffith v. County of Los Angeles, supra, 267 Cal.App.2d 837, 842. See also *Schwarz* v. *County of Marin, supra,* 271

Cal.App.2d 120, 122; *Web Service Co.*, v. *County of Los Angeles, supra,* 242 Cal.App.2d 1, 7; *Best* v. *County of Los Angeles, supra,* 228 Cal.App.2d 655, 657; *Leach Corp.* v. *County of Los Angeles, supra,* 228 Cal.App.2d 634, 637; *Eastern-Columbia, Inc.* v. *County of Los Angeles, supra,* 70 Cal.App.2d 497, 505; and *Wild Goose Country Club* v. *County of Butte, supra,* 60 Cal.App. 339, 342.)

"It is a rule applicable to assessors and to boards having assessing powers that it is presumed that the assessing officers have properly performed the duties entrusted to them, and, consequently, that their assessments are both regularly and correctly made. (Code Civ. Proc., § 1963, subd. 15; . . .)" (*Utah Const. Co.* v. *Richardson* (1922) 187 Cal. 649, 654 [203 P. 401]. See also Evid. Code, § 664; *Griffith* v. *County of Los Angeles, supra,* 267 Cal.App.2d 837, 842; *Web Service Co.* v. *County of Los Angeles, supra,* 242 Cal.App.2d 1, 7; and *Best* v. *County of Los Angeles, supra,* 228 Cal.App.2d 655, 657; but cf. *Birch* v. *County of Orange* (1927) 88 Cal.App. 82, 85 [262 P. 788].)

In *Griffith, supra,* the court noted, "The cases were tried on the theory that assessments on the taxpayer's property to its value exceeded that generally prevailing in the county. For the taxpayers to substantiate this theory it would be necessary for them to submit evidence that there was a disparity of the ratio between that applied to appellants' property and that applied to other property generally prevailing in the county. To prove these contentions, the taxer must, of course, show the ratio prevailing generally and the ratio in his case. To sustain his burden the taxpayer must at least make a prima facie showing in this regard. That is, he must introduce some evidence of the assessment inequality before there is any burden on the assessor. Without this prima facie showing the assessor is not obliged to go forward with any evidence. He may stand on his presumption that the assessment is fair and equitable." (267 Cal.App.2d at p. 842. See also Evid. Code, §§ 605, 606, 660 and 664; *Web Service Co.* v. *County of Los Angeles, supra,* 242 Cal.App.2d 1, 7; and *Leach Corp.* v. *County of Los Angeles, supra,* 228 Cal.App.2d 634, 637.)

In *Schwarz* v. *County of Marin, supra,* the court upheld a summary judgment for the county. It stated, "To offer something less than proof of the assessment ratio of the entire county was of no avail. [Citations.] Appellants as plaintiffs did not produce evidence geared to this ratio, but to a limited sampling only. We must simply recognize the presumption (the Evidence Code was not in effect when this case was tried) that the assessments are correct. [Citations.] Plaintiffs have failed to move forward at all towards carrying their burden of proof." (271 Cal.App.2d at p. 123. See

also *Griffith* v. *County of Los Angeles, supra,* 267 Cal.App.2d 837, 848; and *Wild Goose Country Club* v. *County of Butte, supra,* 60 Cal.App. 339, 342.)

▮ So here, the taxpayer, having relied upon an inappropriate assessment ratio, has failed to meet his burden of proof. Under these circumstances the approval of the assessment by the local board of equalization must stand, and judgment must be entered for the county in the suit for refund.

There is nothing to indicate, as found by the trial court (see fn. 2 above) that the county board of equalization considered data from other hearings in reviewing this taxpayer's assessment. In any event such action could not have been prejudicial because of the failure of the taxpayer to produce evidence which would support a finding in its favor.

The judgment is reversed with instructions to the trial court to revise its findings of fact, conclusions of law and judgment in accordance with the views expressed herein. Let the County of Alameda recover its cost on appeal.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied April 8, 1970, and the following opinion was then rendered:

**THE COURT:** In its petition for rehearing the taxpayer urges that the handbook referred to in the opinion—"The Appraisal of Equipment and Inventory" (June 1961)—and a second handbook "General Appraisal Manual" (June 1964) demonstrate that the assessor's full cash value and the board's full cash value must be identical because the methods of valuation prescribed are the same. The board is authorized and directed to prescribe rules and regulations to govern local boards of equalization when equalizing, and assessors when assessing, and also to prepare and issue instructions to assessors designed to promote uniformity throughout the state. (Gov. Code, § 15606, subds. (c) and (e). See *Gallagher* v. *Boller* (1964) 231 Cal.App.2d 482, 488-489 [41 Cal.Rptr. 880]; and *People* ex rel. *Mosk* v. *City of Santa Barbara* (1961) 192 Cal.App.2d 342, 348-349 [13 Cal. Rptr. 423].) There is evidence to show that the board followed the assessment practices set forth in those handbooks. There is no specific testimony to show that the assessor followed them. Even if it be assumed that he did, it would be enshrining a hypothesis to the exclusion of reality to conclude that two persons applying the same guidelines would arrive at the same absolute figures. The opinion points out that the standards leave room for reasonable differences of opinion. The lacuna in the taxpayer's proof is not cured by reference to the handbooks.

The petition of the plaintiff and appellant for a hearing by the Supreme Court was denied May 6, 1970.